### BARNES v. UNITED STATES.

### BOWERS v. SAME.

(Circuit Court of Appeals, Eighth Circuit. October 29, 1925.)

Nos. 6039, 6040.

1. **Criminal law** ⟨⟩365(2)—Evidence of other sales immediately preceding one charged held admissible as part of res gestæ.

In prosecution for sale of smoking opium, evidence that one of two defendants, who had for years lived together, made other sales to same purchaser on days immediately preceding date on which prosecution is based, *held* admissible, where the agreement for the sale charged was made at one of such prior sales, as part of the res gestæ, and not inadmissible as evidence of another distinct offense.

2. **Criminal law** ⟨⟩1169(5)—Any prejudice from reception of evidence of other offenses cured by charge to disregard.

In prosecution for sale of smoking opium, any prejudicial effect of evidence of other sales on days immediately preceding sale charged was removed by charge to disregard such evidence.

**3. Criminal law ⟨⟩730(10)—Indirect comment of counsel on failure of defendants to testify held reversible error.**

In prosecution for sale of smoking opium, where neither defendant testified, argument of prosecuting counsel that no human being had testified that government witness lied, together with the colloquy that followed, in view of court's failure to charge jury to disregard its effect, *held* prejudicial error, necessitating new trial.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

William H. Barnes and Susie Bowers were convicted of the unlawful sale of smoking opium, and they severally bring error. Reversed, and remanded for new trial.

William Baer, of St. Louis, Mo. (Harvey & Baer, of St. Louis, Mo., on the brief), for plaintiffs in error.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. Plaintiffs in error, defendants below, were joined in an indictment containing three counts. The first count charged the sale of 100 grains, more or less, of smoking opium to one William H. Pryor on the 10th day of March, 1920. The second count charged the unlawful importation of the same opium. The third count charged the unlawful concealment of the same opium. Upon trial a verdict of guilty was returned upon each count. A sentence of imprisonment for two years in the United States penitentiary at Leavenworth, Kan., was imposed upon each count, the terms of imprisonment to run concurrently.

It appears in evidence that one William H. Pryor bought of the plaintiff in error Barnes smoking opium upon the 8th of March, 1920, and again on the 9th day of March, 1920. On the evening of the latter date he contracted with Barnes for the purchase of ten cans of smoking opium at the price of $30. At 2 o'clock of the morning of the 10th, in fact, on the same night the contract was made, Pryor went to Barnes' residence to secure these ten cans of opium. Barnes was not there, but the defendant Bowers was present. She procured and delivered the opium and received the money, which had been marked by government officers for identification. The conversation between Pryor and the defendant Bowers was as follows:

"I said to her, 'Is Barnes in?' She says, 'He is not.' She says, 'Do you want to see him?' I said, 'Yes.' She says, 'Oh, you are the man for them ten cans?' I says, 'Yes.' She says, 'Have you got the money?' I says, 'I have.' She says, 'I will get the stuff.'"

The indictment charges this transaction of the 10th against both defendants. The defendant Barnes contends that he did not make the sale on the 10th, that the transactions of the 8th and 9th were other and distinct offenses, and that the introduction of evidence concerning them was erroneous. The trial judge in his charge expressly excluded from the consideration of the jury the sales alleged to have been made on the 8th and 9th of March, 1920. He said:

"There was some proof in the case as to a sale for $3 of a can to Pryor on the 8th of March, and also some proof of a similar sale 'on the 9th of March. I charge you now that you are to wholly disregard and to use for no purpose in this case that proof, or the tin can or toy that went to you, which I believe was said to have been obtained by Pryor on the 9th of March. I withdraw that tin toy from your consideration, and I withdraw all the evidence as to any alleged sale on March 8th or March 9th from your consideration, and charge you that you are to consider only in this case the alleged sale of March 10, 1920."

[1,2] It is undoubtedly true, in general, that it is error to admit proof of other and distinct offenses to sustain that upon which a defendant is on trial; but, under the circumstances in this case, we do not think that testimony was incompetent for the purpose for which it was offered. It could not, of course, affect the defendant Bowers, and one of the main defenses of Barnes was that he had nothing to do with the sale on the 10th. The sales on the 8th and 9th were, of course, in close proximity to that of the 10th. They were made at the residence of Barnes, the same place where that of the 10th was made. They were, in fact, particularly that of the 9th, parts of the same transaction, and bore upon the connection of Barnes with the opium sold and found there in the early hours of the morning of March 10th, and upon the business in which Barnes was engaged, to such extent as tending to prove his complicity in the sale charged. In fact, it was while the sale on the evening of the 9th was being made that the contract for the sale of 10 cans was made with Barnes himself. Pryor called for these cans at 2 o'clock on the morning of

the 10th; in fact, only a few hours later. The defendant Bowers said: "Oh, you are the man for them ten cans. I will get the stuff."

This shows so clearly the connection of Barnes in the sale that in our judgment this evidence was clearly a part of the res gestæ, not as disclosing another distinct offense, but an integral part of the offense charged. Added to this is the abundant testimony that these two defendants had lived together for many years at different addresses, whether as man and wife is immaterial. Before the arrest of the defendant Bowers, Barnes called for and identified the opium smoking outfit and other property taken in the search, under search warrant, which accompanied the arrest of Bowers, and claimed these articles as his property. In the kitchen, concealed under the kitchen sink, the officers also found two cans of smoking opium and five or six empty cans. Altogether, in our judgment, we think the joint participation of these defendants was amply established, that the evidence adduced was not incompetent under the situation presented, and, in any event, that the court removed any purely incidental effect of this evidence by its careful charge to the jury.

Error is next assigned on behalf of both defendants because of a statement made by the prosecutor, Higgs, in argument. He said:

"The witness Pryor took the stand and testified he bought dope from these defendants, and not a human being has testified that in so testifying Pryor lied.

"Mr. Harvey: I object to that as an incompetent statement.

"The Court: Yes; that is improper, Mr. Higgs, under the circumstances in this case.

"Mr. Harvey: And it is a statement that is prohibited by law, under the statute.

"The Court: Yes; that is true.

"Mr. Higgs: I take it that that is a state statute. I would like to show you—

"Mr. Harvey: It is a clear and unquestioned reference to the fact that none of the defendants took the stand, but saw fit to stand upon the government's testimony—

"The Court: The court rules that it is improper.

"Mr. Harvey: Such a statement as that, your honor, makes unlawful the further hearing of this cause, after a statement of that kind is made to the jury here, and I move now the discharge of this jury, on the ground that that statement has disqualified them.

"The Court: The court refuses to accede to that request. He did not say anything about the source of this evidence; not one word or syllable did counsel mention about the source of this matter; so it is only by inference that you get your objection sustained at all. I am sustaining it fully, but the reference of counsel was only—

"Hr. Harvey: Of course, a direct statement sometimes is stronger than an inference; but an inference may be as strong as a direct statement. I think that is the case here, that the defendants—

"The Court: Nobody has mentioned the defendants but you, and you have just done that this second. The court is saying that it was highly improper for counsel for the government even to make the hint that you now have come out and cleared up. That is so far as the court is going in the matter.

"To which ruling of the court the defendants, by their counsel, then and there at the time duly excepted."

[3] This assignment presents a serious question. The defendants had not testified in their own behalf. The court promptly declared the statement to be highly improper. He did not, however, charge the jury to disregard its effect, and refused to accede to the demand of counsel that the jury be discharged. The colloquy that ensued undoubtedly emphasized and made prominent the potential application of the language used. We feel, therefore, constrained to hold that prejudicial error was thereby committed. It is true, but for the pointed remarks of counsel for defendants, the application might have passed unnoticed; nevertheless, this entire colloquy was precipitated by the original improper statement of the prosecutor, and the language employed was extreme and striking in its terms. It must be noted that the sale of the opium took place in the night, when no one but the defendant Bowers and the witness Pryor were present. There were no others, besides the defendant Bowers, who could have contradicted the testimony of Pryor as to the sale, and pronounced it false. Of course, the sale itself, and the circumstances under which it was made, constituted the gist of the offense, and while, in our judgment, there was ample testimony to establish clearly the guilt of the defendants, nevertheless the protection of defendants against comments of this nature is expressly safeguarded by statute and jealously preserved by the courts. Wilson v. United States, 149 U. S. 60, 13 S. Ct. 765, 37 L. Ed. 650; Linden v. United States (C. C. A. Third Circuit) 296 F. 104; Reagan v. United States, 157 U. S. 301, 15 S. Ct. 610, 39 L. Ed. 709; Stout v. United States, 227 F.

799, 142 C. C. A. 323; Shea v. United States, 251 F. 440, 163 C. C. A. 458; Robilio v. United States, 259 F. 101, 170 C. C. A. 169; Nobile v. United States (C. C. A.) 284 F. 253.

The case of Morrison v. United States, 6 F.(2d) 809, by this court, decided May 9, 1925, is not to the contrary. In that case the court charged the jury that they would not be at liberty arbitrarily to disregard or reject testimony in the case, especially where it was not contradicted. The court found that there was testimony other than that by the defendant to contradict the story told by the government witnesses, and that this remote reference of the court obviously had no appreciable effect of calling attention to the fact that the defendant had not testified. It was there held, with which we agree, that comment by court and counsel that certain testimony is uncontradicted is common, and oftentimes helpful.

The case of Linden v. United States, supra, was distinguished, because in that case it appeared that the apprehension and arrest occurred at night out in a stream. The only persons present were the three defendants and the two customs officers. The latter were witnesses for the prosecution. It followed, therefore, that the only persons who could possibly contradict their testimony were the defendants themselves. In the Morrison Case the court pointed out that the transaction in question took place in the daytime on a public highway, and that it did not appear that the government witnesses and the party charged in the offense were the only ones present. Here the situation is exactly the same as in the Linden Case. The only persons who could contradict the testimony of the government were the defendants themselves, and under such circumstances, involving, as they do, the very gist of the offense charged, we feel that the conduct of the prosecutor cannot be approved.

. It follows, accordingly, that the case must be reversed and remanded for a new trial.