George Henry DOTY, Appellant,

v.

UNITED STATES of America,
Appellee.

Cleo EPPS, Appellant,

v.

UNITED STATES of America,
Appellee.

Raymond O. JONES, Appellant,

v.

UNITED STATES of America,
Appellee.

Jerry Lee HOLIDAY, Appellant,

v.

UNITED STATES of America,
Appellee.

Billy Ray ADAMS, Appellant,

v.

UNITED STATES of America,
Appellee.

Harold Ben MARLEY, Appellant,

v.

UNITED STATES of America,
Appellee.

Albert HILL, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

Sam GILBERT, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 9031–9033, 9035–9038, 9034.

United States Court of Appeals
Tenth Circuit.

June 4, 1968.

On Rehearing in No. 9032
July 23, 1969.

Rehearing Denied in No. 9032
Sept. 30, 1969.

Thomas A. Wallace, Sapulpa, Okl. (Everett S. Collins and Thomas A. Wallace, Sapulpa, Okl., on the briefs), for appellants Doty (9031), Epps (9032), Jones (9033), and Gilbert (9034).

John A. Claro, Oklahoma City, Okl., for appellants Holiday (9035), Adams (9036), Marley (9037), and Hill (9038).

James E. Ritchie, Asst. U. S. Atty. (Lawrence A. McSoud, U. S. Atty., James E. Ritchie, Robert P. Santee, Asst. U. S. Attys., on the brief), for appellee.

Before MURRAH, Chief Judge, and JONES * and HILL, Circuit Judges.

JONES, Circuit Judge.

This is an illicit still and nontax-paid whiskey case on appeal from the United States District Court for the Northern District of Oklahoma. In that court the appellants George Doty, Cleo Epps, Raymond O. Jones, Jerry Lee Holiday, Billy Ray Adams, Harold Ben Marley, Albert Hill and Sam Gilbert, were tried together on an indictment containing fourteen substantive counts charging violations of 26 U.S.C.A. Secs. 5179(a), 5173(a), 5205 (a) (2), 5601(a) (1), 5601(a) (2), 5601 (a) (4), 5601(a) (7) and 5604(a) (1). A fifteenth count based on 18 U.S.C.A. Sec. 371 charged the defendants with conspiring among themselves and with other unnamed persons to violate the above and other sections of the Internal Revenue Code.[1]

---

* Of the Fifth Circuit, sitting by designation.

1. 26 U.S.C.A. Secs. 5171(a), 5601(a) (8), and 5601(a) (12).

With the exception of Sam Gilbert, who was charged only with conspiracy, verdicts of guilty were returned against each of the appellants on the several substantive charges against them. All of the defendants, except Albert Hill, were convicted of the conspiracy charge. Specifying numerous errors as a basis for reversal, the defendants have appealed from the judgments entered on the jury's verdicts. Because of our disposition of the case, however, several of the questions raised need not be discussed or decided.[2]

The principal and most persuasive of the appellants' arguments urges the impropriety of Government counsel's closing remarks to the jury. The record discloses that, of the eight defendants, only Cleo Epps and Sam Gilbert testified in their own behalf.[3]

The other defendants remained silent. Appellants contend here that the United States Attorney focused the jury's attention on this fact

Government counsel's final argument was divided into two fifteen minute portions permitting time for the defense attorneys' closing remarks to intervene. At the beginning of Government counsel's jury address, at a time when the jury is likely to be most attentive, the following observation was made:

"I think the most important thing that has been demonstrated by the evidence in this case is that the evidence is uncontradicted as against every defendant except the defendant Epps and the defendant Gilbert. There is no evidence to deny George Doty, Raymond O. Jones, Thomas Graham. There has been no evidence to contradict that whatsoever. Upon your oaths as jurors, you have no other obligation except to come in with a verdict of guilty as to those defendants because that evidence goes to you now and is to be considered and it has not been contradicted by the defendants whatsoever. It is undisputed. There has been no explanation of it. It is uncontradicted evidence, therefore it stands for the truth."

And again in the second fifteen minute portion of his argument to the jury, the United States Attorney asserted:

"* * * And as I warned you when I made my opening statement in this case, they are going to hit these minor things, but have they gotten up here and discussed the evidence in this case. They have not. Again, still even in the arguments, they have done nothing to show, to contradict the evidence against all of these defendants except two people. And who are these people? The person who is running the operation and her brother who is the purchasing agent."

 It is the general rule that Government counsel may direct the jury's attention to the fact that the evidence against the defendant is uncontradicted, especially when the facts in issue could be controverted by persons other than the defendant.[4] Ruiz v. United States, 10th Cir. 1966, 365 F.2d 103. If this rule were controlling here, then the Government's contention that its attorney's remarks constitute fair comment might

2. Appellants Holiday and Adams assert that incriminating statements were elicited from them in violation of the Fifth Amendment; appellants Hill and Epps assert that a fatal variance exists between the indictment and the evidence adduced at the trial, and several of the appellants assert the lack of substantial evidence to show the existence of a conspiracy.

3. Appellants Holiday and Marley also took the stand but their testimony was elicited only in support of collateral motions.

4. The extent to which this rule conflicts, if at all, with Desmond v. United States, 1st Cir. 1965, 345 F.2d 225, 14 A.L.R. 3d 718, which held that a prosecutor could not properly say to the jury that the evidence was uncontradicted when only the defendant was able to controvert the damaging testimony, need not be discussed. We note only that this Circuit has not been confronted with a case where the fact of uncontradicted evidence has been pointed out to the jury when a defendant was the only person who could offer a contradiction.

have some validity.[5] That the attorney's remarks go beyond a permissive comment that the evidence is uncontradicted, however, is shown by the more general rule as thus stated:

"It is concededly improper and reversible error to comment on the failure of a defendant to testify in his own behalf, and the test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Knowles v. United States, 10th Cir. 1955, 224 F.2d 168.

■ The prosecutor conceded that the Government's evidence was contradicted as to two defendants whom he named. These defendants had taken the stand. The prosecutor asserted and reasserted that the evidence was uncontradicted as to the others. The innuendo is plain. It is clear that the prosecutor intended that the jury should infer that the evidence was uncontradicted by those defendants who did not take the stand. When the prosecutor named the two who had testified and conceded that the evidence as to them was contradicted, can it be doubted that he commented upon the failure of the others to testify when he emphatically demanded the conviction of those who had not testified on the ground that: "The evidence is uncontradicted." The prosecutor's statement that the evidence "has not been contradicted by the defendants" was little, if any, different in meaning, in the context of his argument, from a statement that the defendants had not testified. We conclude that the prosecutor's comments were improper and prejudicial as to all of the appellants, except Gilbert and Epps, and that the convictions of these six appellants must be reversed on this ground.

■ The Government urges that, even if the prosecutor's comments were prejudicial, appellants have waived the error by failure to timely object. It is established that:

"Counsel for the defense cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial." United States v. Socony-Vacuum Oil Co., 310 U.S 150, 238–239, 60 S.Ct. 811, 851, 84 L.Ed. 1129.

In this connection, however, consideration must be given to Rule 52(b), Fed. R.Crim.Proc., 18 U.S.C.A., which provides:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

We believe this rule to be controlling here.

It seems sufficient to say that the prosecutor's comments to the jury operated to diminish the scope of a clearly delineated constitutional guarantee.

"For comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' Murphy v. Waterfront Comm'n, 378 U.S. 52, 55 [84 S.Ct. 1594, 1596, 12 L.Ed.2d 678], which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." Griffin v. State of California, 380 U.S. 609, 614, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106, reh. den. 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730.

We would be remiss in holding, particularly where prejudice is so clearly apparent, that an error of constitutional dimensions does not affect substantial rights. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557. The error is plain; and, notwithstanding the fail-

---

5. But see Desmond v. United States, supra note 4.

ure to object, the comments cannot be condoned.[6]

Appellant Gilbert, who testified in his own behalf at the trial, challenges the sufficiency of the evidence to support the jury's verdict finding him guilty of conspiracy to violate several Internal Revenue laws of the United States. A conviction under 18 U.S.C.A. Sec. 371 requires "Proof of an agreement to commit an offense against the United States." Pereira v. United States, 347 U.S. 1, 12, 74 S.Ct. 358, 364, 98 L.Ed. 435. In Jones v. United States, 10th Cir. 1958, 251 F.2d 288, 290, it is stated by this Court:

> " 'In determining [the question of] the sufficiency of the evidence to support a verdict, the inferences to be drawn therefrom are viewed in the light most favorable to the prosecution.' O'Neal v. United States (10th Cir. 1957, 240 F.2d 700, 701); Seefeldt v. United States, 10 Cir., 183 F.2d 713; Wilder v. United States, 10 Cir., 100 F.2d 177. The agreement need not be in any particular form. By its nature it is seldom susceptible of direct proof. Ordinarily conspiracies can be established only by the acts and conduct of the conspirators and the inferences to be drawn therefrom. Butler v. United States, 10 Cir., 197 F.2d 561. Generally convictions will be sustained if the circumstances, acts and conduct of the parties are of such character that the minds of reasonable men may conclude therefrom that an unlawful agreement exists."

Necessarily, knowledge of the conspiracy is "an essential ingredient of the proof" required to support a verdict. Ingram v. United States, 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503.

The evidence, as it relates to Sam Gilbert's involvement in a conspiracy, may be thus summarized. On March 30, 1965, Gilbert purchased 10,000 pounds of sugar from Gordon Hixson with funds obtained from his sister, appellant Epps. Hixson arranged the sale through a warehouse in Fort Smith, Arkansas. On April 8, 1965, an additional 12,000 pounds of sugar was purchased through the same grocer and warehouse, but ·Gilbert denies any involvement in this transaction. To prove Gilbert's involvement in the second transaction, Alcohol and Tobacco Tax investigators testified that on April 8, 1965, they followed a red Ford truck travelling along Highway 64 away from Fort Smith, Arkansas, toward Warner, Oklahoma. Following two or three car-lengths behind the truck, the investigators, so they claimed, were able to ascertain that the truck contained many sacks of White Gold sugar. One of the investigators, Robert M. Finley, stated that, when the truck entered a weigh station near Warner, a 1964 maroon Chevrolet containing two occupants pulled off alongside the road just past the station. Finley testified that, after a few minutes, the maroon Chevrolet continued on into Warner, pulled into a drive-in parking area, remained there for a short while, proceeded back toward the weigh station, and then ten or fifteen minutes later returned to the drive-in parking area. In addition to corroborating this account, John L. Day, the other investigator, testified that Sam Gilbert was the driver of the truck and identified Cleo Epps and Raymond O. Jones as the occupants of the maroon Chevrolet.

Our attention is directed to no other testimony showing appellant Gilbert's connection with or knowledge of the alleged conspiracy. Viewing the evidence in a light most favorable to the prosecution, it may be taken as established that Gilbert made large sugar purchases on March 30 and April 8, and that, on this latter occasion, he was convoyed into Oklahoma by his sister and Raymond O. Jones. The jury might con-

---

6. Other cases finding a prosecutor's closing argument to constitute plain error are United States v. Graham, 6th Cir. 1963, 325 F.2d 922; Wagner v. United States, 5th Cir. 1959, 263 F.2d 877; Ginsberg v. United States, 5th Cir. 1958, 257 F.2d 950, 70 A.L.R.2d 548; Stewart v. United States, 1957, 101 U.S. App.D.C. 51, 247 F.2d 42; Read v. United States, 8th Cir. 1930, 42 F.2d 636.

jecture that Gilbert was hauling sugar to a still but the fact that he was being followed for some undisclosed purpose by Epps and Jones does not trace the sugar to any still identified with any of the other alleged conspirators or into any illicit spirits which any of the other alleged conspirators may have made or sold. The most speculative conjecture could not place the sugar hauled by Gilbert at the still of any of the other alleged conspirators at any pertinent time since the raid was a half year later. No testimony even intimates that Gilbert was personally involved in any of the whiskey sales. While Gilbert's sugar purchases and association with Epps and Jones may be sufficient to create a suspicion, we say here as this Court has said before:

> "Evidence which creates a mere suspicion of guilt is not enough. Guilt may not be inferred from mere association." Glover v. United States, 10th Cir. 1962, 306 F.2d 594.

The evidence against Gilbert is not sufficient to support a conviction.

Appellant Cleo Epps, who also testified at the trial, was convicted on two counts of aiding and abetting others in the sale of untaxed spirits and of conspiracy to violate specified Internal Revenue laws relating to liquor. At trial the Government was permitted, over appellant's objection, to introduce into evidence several tape recordings of telephone conversations carried on between Epps and Charles Reese Walter, an undercover Alcohol and Tobacco Tax investigator. These recordings, which were made with the consent and under the direction of Agent Walter, constituted a substantial part of the Government's case against Epps. Epps contends here that the admission of these recordings into evidence invaded her rights under the Fourth Amendment.

Katz v. United States, 389 U.S. 347, 88 S.Ct. 362, 19 L.Ed.2d 576, is the most recent of the Supreme Court decisions dealing with the admissibility of electronically obtained eavesdrop evidence. In that case, it was held that the use of an electronic listening and recording device attached to the outside of a public telephone booth to obtain evidence against a suspect constituted a "search and seizure" within the meaning of the Fourth Amendment. Because the search was conducted without prior judicial sanction as required by the Fourth Amendment, Katz' conviction was reversed.

We think the principles of Katz are applicable here. There is, to be sure, a factual difference between this case and Katz. We are unable to see any distinguishing difference between the placing of the eavesdropping device at one rather than at the other end of the telephone line over which the recorded conversation was communicated. The fact that the appellant's recorded conversation was with an undercover agent of the Government does not render it admissible. United States v. White, 7th Cir. 1968, 405 F.2d 838. But see Dancy v. United States, 5th Cir. 1968, 390 F.2d 370. Because no prior approval by judge or magistrate was sought or obtained, the search was unreasonable, and appellant Epps is entitled to a new trial without this evidence being used against her.

■ It seems appropriate to observe that while the conviction of the appellant, Harold Ben Marley, is being reversed because of improper comment of the prosecuting attorney, a reversal would probably be required because of inadequate evidence to sustain a conviction. It is shown that Marley made several purchases of plastic jugs using the same alias as had been used by the appellant Jones in making similar purchases. More than four months after the last of his jug purchases, Marley was seen driving a pick-up truck along a country road about a mile distant from the location of the still which was involved in this cause and which was then under surveillance by the agents of the revenue. This evidence, like that against Gilbert, may create a strong suspicion that Marley was implicated in a conspiracy with some or all of the other appellants, but

it is not enough to make a case for the jury.

For the reasons herein set forth, the judgment of the district court as to all of the appellants is reversed and the cause remanded for such proceedings, not inconsistent with the opinion, as may be appropriate.

Reversed and remanded.

### On Petition for Rehearing in Appellant No. 9032.

PER CURIAM:

Appellant, Cleo Epps, was convicted on two counts of aiding and abetting others in the sale of untaxed spirits and of conspiracy to violate specified Internal Revenue laws relating to liquor. Mrs. Epps was tried in a joint trial with seven other persons, also charged with various illicit whiskey violations of the Internal Revenue Code. All of the defendants were convicted of one violation or another. On appeal to this Court, we reversed the judgment of the district court as to all of the appellants and remanded the cause for proceedings consistent with the opinion. The Government petitioned for a rehearing as to the reversal of the conviction of Mrs. Epps.

A substantial part of the Government's case against Mrs. Epps was established by the introduction into evidence, over objection, of several tape recordings of telephone conversations between Epps and Charles R. Walter, an undercover Alcohol and Tobacco Tax investigator. These recordings were made with the consent and with the authorization of Agent Walter. They were recorded at the Agent's end of the telephone line. Being guided, or perhaps misguided, by Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, we reversed Epps' conviction and held that the evidentiary use of these recordings, as procured, violated her rights against unreasonable search and seizure. Our reversal was solely on this ground.

██ Reconsideration of Katz, supra, convinces us that our interpretation of

and reliance on that decision was misplaced. This conclusion is strengthened by the fact that since argument was heard on rehearing, the Supreme Court has held that: "Katz is to be applied only to cases in which the prosecution seeks to introduce the fruits of electronic surveillance conducted after December 18, 1967." Desist v. United States, 394 U.S. 244, 254, 89 S.Ct. 1030, 1036, 22 L.Ed.2d 248. The recordings admitted in evidence against Epps were made more than two years before December 18, 1967. The principles of Katz, therefore, are no help to Epps.

It was not until Katz that the Supreme Court overruled its earlier decisions "that the Fourth Amendment encompassed seizures of speech only if the law enforcement officers committed a trespass or at least physically invaded a constitutionally protected area of the speaker." Kaiser v. New York, 394 U.S. 280, 282, 89 S.Ct. 1044, 1046, 22 L.Ed. 2d 274. Prior to Katz, such an intrusion was necessary to constitute an unlawful search or seizure. Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944. Before Katz, it was the law that one who voluntarily enters into a conversation with another takes the risk that such person may memorize or record the conversation. Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312; Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374; Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462. "[O]ne party may not force the other to secrecy merely by using a telephone." Rathbun v. United States, 355 U.S. 107, 110, 78 S.Ct. 161, 163, 2 L.Ed. 2d 134. It is doubtful that Katz disturbed these principles. See note of Mr. Justice White concurring in Katz, 389 U.S. 363, 88 S.Ct. 507. Since Katz, this Court has held that the teachings of Lopez, Lewis and Hoffa were not altered by Katz. Holt v. United States, 10th Cir. 1968, 404 F.2d 914.

██ Notwithstanding what we might have said in Holt v. United States, supra, about the effect of Katz, it was estab-

**894**

lished in this Circuit before December 18, 1967, that evidence obtained by recording a telephone conversation with consent of one of the parties but without the knowledge or consent of the other is admissible and does not violate the Fourth or Fifth Amendments. Rogers v. United States, 10th Cir. 1966, 369 F. 2d 944; Ferguson v. United States, 10th Cir. 1962, 307 F.2d 787, withdrawn and rev'd on other grounds, 329 F.2d 923. Other Circuits have reached the same conclusion. Carnes v. United States, 5th Cir. 1961, 295 F.2d 598, cert. denied 369 U.S. 861, 82 S.Ct. 949, 8 L.Ed.2d 19; Lindsey v. United States, 9th Cir. 1964, 332 F.2d 688; United States v. Leighton, 2nd Cir. 1967, 386 F.2d 822, cert. denied, 390 U.S. 1025, 88 S.Ct. 1412, 20 L.Ed.2d 282.

 "Since the wiretapping in this case occurred before Katz was decided and was accomplished without any intrusion into a constitutionally protected area of the petitioner, its fruits were not inadmissible under the exclusionary rule of the Fourth and Fourteenth Amendments. Mapp v. Ohio, 367 U.S. 643" [and 81 S.Ct. 1684, 6 L.Ed.2d 1081]. Kaiser v. New York, supra 394 U.S. at 282–283, 89 S.Ct. at 1046. The recordings were properly admitted against Epps.

The previous opinion of this Court is withdrawn in so far as it relates to Cleo Epps. The judgment of Cleo Epps in No. 9032 is now

Affirmed.

#### ON PETITION FOR REHEARING IN APPELLANT NO. 9032.

PER CURIAM:

The appellant, Cleo Epps, with a number of others, was convicted of aiding and abetting in the sale of untaxed spirits and on a conspiracy count involving illicit liquor operations. This Court decided that the convictions of all of the defendants should be reversed. On a petition for rehearing filed by the United States, this Court being guided by recent decisions of the Supreme Court decided that the conviction of Cleo Epps

should be affirmed. She has now filed a petition for a rehearing of this decision on the ground that her conviction cannot stand with the convictions of all of her co-defendants being reversed. The contention is without merit. Von Patzoll v. United States, 10th Cir. 1947, 163 F.2d 216, cert. denied 332 U.S. 809, 68 S.Ct. 110, 92 L.Ed. 386; Roth v. United States, 10th Cir. 1964, 339 F.2d 863. We adhere to our affirmance of the judgment of conviction and sentence of the appellant Cleo Epps and her petition for rehearing is

Denied.