**UNITED STATES of America,
Appellee,**

v.

**Michael D. WILLIAMS, Appellant.**

**No. 73–1145.**

United States Court of Appeals,
Fourth Circuit.

Argued May 9, 1973.

Decided June 13, 1973.

Robert M. Harvey, Dunbar, W. Va. [Court-appointed counsel], for appellant.

John A. Field, III, U. S. Atty., for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and CRAVEN, Circuit Judge.

CRAVEN, Circuit Judge:

Michael Williams appeals his conviction by a jury in district court for distributing heroin in violation of 21 U.S.C. § 841(a)(1). Three of the several points of assigned error are worth discussion: the admissibility of a confession, the in-court identification of defendant's "girlfriend," and remarks made by the prosecutor in his closing statement to the jury.

The government's case rests primarily on the testimony of Melvin Lee. The evidence tended to show that special narcotics agent Rinehart observed Lee going to the doorway of defendant Williams's apartment and then returning with 18 bags of heroin purchased with $200 furnished by Rinehart. Lee testified that he bought the heroin from defendant Williams and that Williams's girlfriend, Madonna Breeden, was present in the apartment at the time of the purchase. Lee also pointed out Madonna Breeden, in the presence of the jury, as being then present in the courtroom. Defendant Williams is black; Madonna Breeden is white.

The only other evidence of consequence is a confession by Williams obtained under allegedly improper circum-

**1140**

stances. Williams was twice given the *Miranda* warnings, and on the second occasion signed a waiver of his rights. He then indicated a willingness to talk, at which time special agent Rinehart suggested that he "try to help himself." Williams supposedly responded, "You mean by introducing you around to people[,] like Melvin [Lee] introduced you to me." Rinehart then asked him, "Do you mean to say you are now telling me you sold me heroin?" Williams replied, "Yes."

■ Once conversations lawfully begin, we believe a law enforcement officer may properly tell the truth to the accused, and we think it is a fact of criminal life that accused persons can and often do help themselves by cooperating with the police, *e.g.*, if he testifies about the criminal activity of others, he may be granted immunity for his testimony, obtain a dismissal of cumulative counts, or at the very least obtain a recommendation of leniency from the prosecutor. The timing of a conversation such as this one is of controlling importance. Here, the suggestion of cooperation came only after full *Miranda* warnings had twice been given and after Williams had waived his right against self-incrimination. Thus, we are not presented with the question whether the warnings may have been diluted by advice that it is better to cooperate than to exercise one's constitutional rights.

Upon the facts of this case we hold that Williams's admission of the sale of heroin was neither induced nor obtained by any direct or implied promise. *See* United States v. Springer, 460 F.2d 1344 (7th Cir. 1972); United States v. Glasgow, 451 F.2d 557 (9th Cir. 1971); United States v. Ferrara, 377 F.2d 16 (2d Cir. 1967); Martin v. United States, 166 F.2d 76 (4th Cir. 1948).

■ Of greater concern to us are the defendant's points of error concerning the prosecutor's statements to the jury and the identification of Madonna Breeden. In his closing argument to the jury, the Assistant United States Attorney said that the government's evidence was the only evidence in the case, that it "is uncontradicted and undenied and unrefuted." It is urged upon us that this was a comment on the failure of the defendant to testify in violation of the fifth amendment as interpreted in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

It is true that the overwhelming weight of authority, even after *Griffin*, is to the effect that the prosecutor may point out that the defense did not offer evidence to contradict the government's case, United States v. Lipton, 467 F.2d 1161, 1168 (2d Cir. 1972); United States v. Hager, 461 F.2d 321, 324 (7th Cir. 1972); United States v. Lepiscopo, 458 F.2d 977, 979 (10th Cir. 1972); United States v. Smith, 421 F.2d 1229, 1230 (3d Cir. 1970); United States v. Johnson, 337 F.2d 180, 203 (4th Cir. 1964), aff'd, 383 U.S. 169, 86 S.Ct. 749, 15 L. Ed.2d 681 (1966); Davis v. United States, 279 F.2d 127 (4th Cir. 1960), at least where it is apparent that witnesses other than the defendant might have been offered by the defense. Desmond v. United States, 345 F.2d 225 (1st Cir. 1965).[1] The test adopted by several circuits is: "Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?"[2]

The argument to a jury that the government's evidence is "undenied," although sometimes approved, *see* 53 Am. Jur. Trial 378n.6 (1945), seems to us to

---

1. In *Desmond* the First Circuit announced a rule that comment concerning lack of contradiction is improper "[U]nless it is apparent *on the record* that there was someone other than himself whom the defendant could have called." [Emphasis added]. Desmond v. United States, 345 F.2d 225, 227 (1st Cir. 1965).

2. See United States v. Follette, 418 F.2d 1266, 1269 (2d Cir. 1969), and the cases therein cited.

skirt the precipice of reversible error. The very entry of a not-guilty plea is an effective denial of all of the government's evidence. That evidence may be unrefuted and uncontroverted certainly does not mean that the defendant fails to deny its truth. But in context with the words "uncontroverted" and "unrefuted," we are unable to say with any degree of assurance that the jury was misled.

In United States v. Weems, 398 F.2d 274, 275–276 (4th Cir. 1968), we held that a "single statement by the prosecutor, in the course of his closing argument to the jury, to the effect that certain evidence and testimony was 'uncontradicted and undisputed' " was not plain error. We then admonished "United States Attorneys in this circuit to observe the spirit of *Griffin* and to avoid jeopardizing otherwise certain convictions by arguments that border on forbidden ground." We repeat the monition.

As to Lee's in-court identification of Madonna Breeden, we are gravely concerned with Williams's assertion that it was a blatant and unnecessary injection of a matter (race) calculated to inflame the jury. If we were convinced of invidious purpose we would reverse. But the government urges plausibly that Madonna Breeden was identified before the jury in order to establish a basis for the prosecutor's later comment during his jury argument that the government's evidence was "uncontradicted," *i.e.,* to show on the record that the defendant could have called another witness and did not do so. It is beyond argument that showing the availability of such a witness is material and competent even in those jurisdictions that require no such foundation for the comment, and as we have noted, it is essential in the First Circuit. *See Desmond, supra.* Although we cannot help wondering if the reason advanced

by the government for her identification is not a pretentious afterthought, we think we should not impute the worst motive the facts will support when a perfectly lawful reason for the identification of Madonna Breeden is equally supportable.[3]

We have considered the other assignments of error and find them to be without merit. The conviction is, therefore,

Affirmed.

---

3. *See* State v. Hill, 181 N.C. 558, 560, 107 S.E. 140, 141 (1921) :

It has been said that it is neither charity, nor common sense, nor law, to infer the worst intent which the facts will admit of; the reverse being the true rule both of justice and of law.