**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Gordon JENKINS, Defendant-Appellant.**

**No. 35435.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Nov. 19, 1974.

Motion for Rehearing or Transfer Denied
Dec. 6, 1974.

Application to Transfer Denied
Jan. 13, 1975.

Charles D. Kitchin, Public Defender, John F. Bauer, G. Jeffrey Lockett, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Philip M. Koppe, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Julius D. Cosentino, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Judge.

Named in a two-count indictment, defendant Gordon Jenkins was found guilty of attempted robbery in the first degree by means of a dangerous and deadly weapon, and of assault with intent to kill with malice aforethought. Since the jury was unable to assess punishment on either count, the court sentenced defendant to two consecutive fifteen-year prison terms. Defendant then lodged the instant appeal.

Defendant on appeal does not question the sufficiency of the evidence, but enumerates six other assignments of error. The facts and evidence favorable to the verdict revealed the following. On June 29, 1972, at approximately 10:15 p. m., four young men, defendant among them, entered the Casino Bar located at Taylor and Kennerly Streets in St. Louis. Defendant and another remained at the front door while their two companions proceeded to the rear of the tavern. Prosecution witness Earnest Robinson, general manager and bartender of the Casino, at this time walked up to the two men standing at the front door and asked to see their "I.D." cards. In response, defendant announced "this is a stickup", and shot Robinson twice in the leg. Robinson proceeded to pull a gun from his pocket and fired two shots in the direction of defendant and his accomplice. He testified that he was unable to determine whether he had hit either of the men. Moments later, as he was attempting to leave the tavern with defendant, a companion shot Robinson in the stomach. This same assailant then picked up Robinson's

gun (which he had dropped after being shot) and fired another shot, which barely missed Robinson's face. All then fled the scene. Defendant was arrested at his home, 2935 Henrietta in St. Louis, on July 1, 1972.

At trial, Robinson positively identified defendant as the man who had shot him twice in the leg. He further testified that he had identified defendant in a lineup photograph shown to him at the time of his hospitalization for the gunshot wounds.

Three other persons, also present in the tavern the night of the shooting, testified on behalf of the State. Delores Pearson pointed out defendant as a participant in the shooting and attempted robbery. She further testified that she had seen a "mug shot" of defendant the night of the shooting, and also had viewed a photograph of defendant in a lineup about a month before trial. Another witness, Harriet Williams, corroborated much of Robinson's testimony. She not only identified defendant at trial as a participant in the accident, but also testified that she had recognized defendant in a lineup held two days after the shooting. She expressed no doubt that defendant was involved in the incident. A third witness, John Taylor, testified that he was present at the tavern the night in question, and his narration of the shooting event substantiated earlier testimony. Taylor, however, did not identify defendant.

A medical record introduced into evidence showed that defendant had entered the emergency room of Firmin Desloge Hospital at 11:50 p. m. the night of the shooting for treatment of a leg injury, diagnosed by the medical report as a bullet wound.

Defendant's only evidence consisted of the testimony of an investigator from the Public Defender Bureau. This witness testified that he had interviewed Delores Pearson in December, 1972, at which time Ms. Pearson told him that she was unable to identify any of the participants in the shooting, although she had been present.

In his first point, defendant contends that the trial court erred by admitting into evidence his hospital record, described above. Defendant presents numerous objections concerning this evidence. He initially urges that this record was irrelevant and immaterial, claiming, among other things, that the evidence did not show that he was shot at the scene of the crime, nor was there proof that he was in fact the person treated at the hospital. Evidence is relevant and material in a legal proceeding if it tends logically to prove or disprove, to support or establish a fact or issue between the parties. State v. Moore, 435 S.W.2d 8, 11[2] (Mo. banc 1968); State v. Walden, 490 S.W.2d 391, 393[1] (Mo.App.1973). The primary fact or issue in this case concerned defendant's presence and involvement in the shooting and attempted robbery at the Casino Bar on the night in question. Other evidence indicated that defendant and a companion had been fired on by the bartender. While there was no testimony that defendant had been struck by a bullet, the contents of the hospital record were at least circumstantial evidence as to his participation in the crime. It is possible that defendant could have received the wound elsewhere. But such circumstantial evidence may have material relevance even though it does not exclude every adverse possibility. State v. Fields, 434 S.W.2d 507, 516[7] (Mo.1968). The medical record also contained defendant's name and the same address where he was arrested. From identity of name, identity of person may be presumed. State v. Griffie, 118 Mo. 188, 23 S.W. 878, 881 (1893); State v. Sheets, 468 S.W.2d 640, 642[1] (Mo.1971). The record was relevant and material.

Defendant argues that this record also contained hearsay evidence and therefore was inadmissible. The trial court admitted the record into evidence under § 490.680, RSMo. 1969, V.A.M.S. (Uniform Business Records as Evidence Law). Defendant has not argued nor objected that the record in question was improperly

qualified under the above section, and our review of the proceedings indicates that the hospital record was admitted as a qualified business record. Therefore, since the medical report was properly qualified, defendant's general hearsay objection has been obviated. State v. Taylor, 486 S.W.2d 239, 242[4] (Mo.1972); State v. Durham, 418 S.W.2d 23, 30[14, 15] (Mo.1967). In such a situation, contrary to his allegation, defendant's right of confrontation and cross-examination are not denied. State v. Durham, *supra* at 30[19,20].

Defendant challenges the contents of this report, alleging the same was made by an "unqualified anonymous witness" and the hearsay exception under § 490.680 does not extend this far. The medical report contained a diagnosis of defendant's injury as a gunshot wound and a leg x-ray showing metallic fragments, which most likely represented bullet particles. Testimony revealed that the report was prepared by two physicians, a surgeon and a radiologist. Since these men were physicians, their qualifications may be assumed. Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 668[10] (1956). Likewise, a proper expert medical opinion contained in a hospital record is admissible. State v. Ford, 487 S.W.2d 1, 5[7] (Mo.1972). This includes diagnoses and x-ray interpretations. Allen v. St. Louis Public Service Co., *supra*, 285 S.W.2d at 667[8]. In this situation, two experts, a surgeon and a radiologist, expressed their expert opinions in the medical report. Such were properly admitted. Therefore, defendant's contention, unsupported by authority, that "anonymity" in some way affects the admissibility of this report, is without merit. What we have held above with respect to defendant's complaints concerning hearsay and expert opinion evidence in the medical record disposes of his contention that no proper foundation was laid for the admission of this record, since this argument was premised solely on those points.

Defendant next maintains the introduction of the hospital record violated the doctor-patient privilege guaranteed by § 491.060, RSMo. 1969, V.A.M.S. However, this point is raised for the first time on appeal. At no time during trial was the privilege asserted, and it was not raised in defendant's motion for a new trial. Therefore, this point has not been preserved for appeal. Rule 84.13(a), V.A.M.R. The hospital medical record was properly admitted into evidence.

Defendant further contends that the court erred by admitting State's exhibit number one into evidence. This was a photograph depicting defendant in a lineup with four other black males. Defendant asserts this evidence was irrelevant and immaterial, lacked a proper foundation, and was unauthenticated. This argument is without merit. Prosecution witness, Earnest Robinson, shown this photograph while testifying, stated that it had been displayed to him while he was in the hospital, and that he had identified defendant from the photograph at that time. Since Robinson identified defendant, his testimony concerning an out-of-court photographic identification is admissible. State v. Degraffenreid, 477 S.W.2d 57, 62[12] (Mo. banc 1972). Therefore, the photograph, i. e., State's exhibit number one, was relevant and material as to the accuracy of the witness's identification of defendant, and was properly admitted. State v. Holmes, 389 S.W.2d 30, 34[5] (Mo.1965).

But, according to defendant, the admission of the lineup photograph improperly allowed the jury to speculate on his presence in the lineup, and permitted an inference that he had been arrested by the police at some time prior to the alleged offense, thereby prejudicing him. This argument is mere speculation. Testimony elicited at trial as well as closing argument informed the jury that the lineup was held shortly after the shooting, in fact, the day of defendant's arrest, and the photographs

were taken at that time. Likewise, nothing in the physical appearance of the photograph itself could have lead the jury to speculate erroneously as to the nature of timing of defendant's arrest. We find no prejudice to defendant.

■ Defendant further argues that this photograph was unauthenticated, and that there was no showing that it was a fair and accurate representation of him. However, this contention is raised for the first time on appeal; therefore, nothing has been preserved for review. Rule 84.13(a).

■ Next, defendant alleges the trial court committed plain error by admitting State's exhibit number two into evidence. This plain error allegation is based on essentially the same arguments discussed above against the introduction into evidence of State's exhibit number one. Exhibit number two was also a lineup photograph of defendant with three other black males. Two witnesses stated that they had been shown this photograph and had identified defendant. Plain error has occurred only "when the court deems that manifest injustice or miscarriage of justice has resulted therefrom". Rule 27.20(c). Our review of the record reveals no such circumstances present in this case. Again, defendant could not have been prejudiced by this evidence, since the jury was fully apprized of the date and circumstances of the lineup.

■ Defendant next contends that the trial court erred in failing to declare a mistrial when the prosecuting attorney, in closing argument, held out for the jury's view State's exhibits one and two, i. e., the photographs depicting defendant in the lineups. Earlier, the court had ruled that the prosecutor would not be able to pass these exhibits to the jury in closing argument since the lineup was no longer an issue. But the court had ruled the photographs could be so utilized if defense counsel in closing argument attacked the identification testimony of the prosecution witnesses. It cannot be disputed that the prosecutor failed to heed the court's ruling. However, defense counsel immediately objected, and the court sustained this objection, but overruled the motion for a mistrial. The declaration of a mistrial necessarily and properly rests largely in the discretion of the trial court who observed the incident giving rise to the request for a mistrial. That court is in a better position than an appellate court to evaluate the prejudicial effect and its removal short of a mistrial. Holt v. State, 433 S.W.2d 265, 269[9] (Mo.1968); State v. Dennison, 428 S.W.2d 573, 577[2] (Mo.1968). A mistrial is a drastic remedy and the power of a trial court in that respect should be exercised only in extraordinary circumstances. State v. Smith, 431 S.W.2d 74, 83[22] (Mo.1968). In the situation here, the exhibits had been introduced into evidence and identified by witnesses, the court had sustained the objection raised, and the exhibits were not viewed again in any way by the jury. A review of the record reveals no extraordinary circumstances to warrant a mistrial, and we cannot say that the trial court abused its discretion in failing to order a new trial. Defendant's argument to the contrary is without merit.

We turn to defendant's next contention. He urges that the trial court erred in failing to grant a mistrial because of statements made during closing argument by the prosecuting attorney. The comments complained of were: "Don't you think if he wasn't involved in this incident he would have been with his parents or his brothers or his sisters or his girlfriend, or somebody would be here to say they were with Gordon Jenkins at the time this happened." An objection made to these remarks was sustained, since they consisted of improper rebuttal argument, but a motion for mistrial was overruled. According to defendant, that portion of the prosecutor's closing argument in question improperly inferred that defendant had the burden of producing an alibi, a burden not imposed upon him by law. This in turn would have required defendant to take the

stand and state that he was alone. He thus alleges that his Fifth Amendment rights were infringed. Defendant adds that these statements also violated § 546.-270, RSMo.1969, V.A.M.S.[1] (identical to Rule 26.08). All of these contentions by defendant deal with the right of an accused not to testify.

It is now well-settled that comment on the failure of an accused to testify violates the Fifth Amendment privilege against self-incrimination.[2] Griffin v. California, 380 U.S. 609, 611, 85 S.Ct. 1229, 1231, 14 L.Ed.2d 106 (1965). However, there can be no constitutional nor statutory violation unless there is a *direct* and *certain reference* to the failure of the accused to testify. State v. Hutchinson, 458 S.W. 2d 553, 555[3] (Mo. banc 1970); State v. Pruitt, 479 S.W.2d 785, 789[8] (Mo. banc 1972). Thus, a reference to the failure of the accused to offer evidence or to call witnesses is not prohibited. State v. Sechrest, 485 S.W.2d 96, 98[3] (Mo.1972); State v. Pruitt, *supra*, 479 S.W.2d at 789[8]. Scrutiny of the comments under attack in this case reveals no direct and certain reference to defendant's failure to testify. Rather, there is only the suggestion that other witnesses did not testify in his behalf. As such, these remarks constitute but a reference to defendant's failure to produce evidence, which is permitted under the *Pruitt* and *Sechrest* cases *supra*. When § 546.270 (Rule 26.08) is at issue, an appellate court will not interfere unless the record shows that the trial court abused its discretion to the prejudice of the defendant, or unless the statements made at oral argument were plainly unwarranted and clearly injurious. State v. Hutchinson, *supra* at 556[4]. We have examined the record and do not find an abuse of discretion to defendant's prejudice; nor are the comments "plainly unwarranted and clearly injurious." We thus find no violation of applicable constitutional, statutory, or rule provisions.

In his final assignment of error, defendant challenges the trial court's giving of Instruction No. 9. Defendant asserts that this instruction was coercive, conveyed an erroneous interpretation of the law, and denied him a fair trial. The court rendered the instruction in question after the jury had been deliberating some three to three and one-half hours. This instruction was given after the jury reported that it was unable to reach a verdict on both counts, while a verdict had been reached on one count. Instead of receiving a verdict only on one count, the court tendered Instruction No. 9,[3] usually termed the "Hammer" instruction, reminding the jury as to the desirability of reaching a verdict. This instruction has been repeatedly approved in judicial decisions. See State v. Jackson, 446 S.W.2d 627, 629[2], 630[3] (Mo. 1969), and cases cited therein. When a jury is unable to arrive at a verdict, it is within the discretion of the trial judge to determine whether such an instruction should be given, and likewise as to when it should be rendered. State v. Barron, 465 S.W.2d 523, 530[14, 15] (Mo. 1971). No abuse of discretion appears in this case. We find defendant's extensive denunciation of Instruction No. 9 to be without merit.

Judgment is affirmed.

DOWD, C. J., concurs.

KELLY, J., dissents in separate opinion.

KELLY, Judge (dissenting).

I respectfully dissent with respect to the holding of the majority on Point 5 of defendant's allegations of trial error.

---

1. § 546.270 provides in part: "If the accused shall not avail himself or herself of his or her right to testify * * *, it shall not be construed to affect the innocence or guilt of the accused * * *, nor be referred to by any attorney in the case, * * *."

2. Article 1, Section 19, Mo.Const.1945, V.A. M.S. guarantees a defendant the same privilege.

3. Instruction No. 9 follows the pattern of present MAI–CR 1.10.

The reason I dissent is that it is my opinion that while this Court is constitutionally bound to follow the holding of the Supreme Court of the State of Missouri in State v. Hutchinson, 458 S.W.2d 553 (Mo. banc 1970) and State v. Pruitt, 479 S.W.2d 785 (Mo. banc 1972) that there can be no constitutional, statutory nor rule violation unless there is a direct and certain reference to the failure of the accused to testify by Article 5, Sec. 2 of the Constitution of Missouri, 1945, we are here considering what is a federally guaranteed constitutional right which has been allegedly violated and the wrong rule of law has been applied.

In Hutchinson, *supra*, 458 S.W.2d l.c. 555, the Court recognized that since the question whether a defendant's right under the Fifth Amendment to the United States Constitution not to be compelled in any criminal case to be a witness against himself is a federally guaranteed right made applicable to the several states by the Fourteenth Amendment to the United States Constitution, Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), those rights are to be protected by federal, not state, rules and standards. Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1966).

Further, in Hutchinson the Court distinguished Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) and Chapman, *supra*, on the basis that they involved situations where there were "direct and certain reference to failure of the accused to testify," and they did not therefore apply in cases where there was no direct reference to the failure of the accused to testify. The Court said that no case of the Supreme Court of the United States has "articulated a federal standard applicable to the States which would require in a fact situation such as that which confronts us that we hold that the argument violated defendant's Fifth and Fourteenth Amendment rights." No such case has come from the Supreme Court of the United States to this date.

Nonetheless, reference to cases on this point decided by the several United States Circuit Courts of Appeal makes it clear that the test applied for violation of these same rights under federal law is more restrictive than the "direct and certain reference" gauge applied in this State. The rule in those courts is whether the comment contained language intended to be, or which was of such character "that the jury would *naturally and necessarily* take it to be a comment on the failure of the accused to testify?" (Emphasis supplied). United States ex rel. Leak v. Follette, 418 F.2d 1266, 1269 (2nd Cir. 1969), cert. denied, 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665.

Many post Griffin and Chapman federal cases have upheld the right of the prosecutor to argue to the jury that his case stands uncontradicted, or that the defense has come forward with no evidence, or that the defense has produced no witnesses *except* in those instances where *the defendant alone* could possibly contradict the government's evidence. United States v. Flannery, 451 F.2d 880, 882 (1st Cir., 1971); Rodriguez-Sandoval v. United States, 409 F.2d 529, 531[2] (1st Cir. 1969); Desmond v. United States, 345 F. 2d 225, 227[7] (1st Cir. 1965); United States v. Dioguardi, 492 F.2d 70, 81[6] (2nd Cir. 1974); United States v. Lipton, 467 F.2d 1161, 1168 (2nd Cir. 1972); United States v. Williams, 479 F.2d 1138, 1140[3] (4th Cir. 1973); Williams v. Wainwright, 416 F.2d 1042, 1044 (5th Cir. 1969); United States v. Handman, 447 F. 2d 853, 855[1, 3, 4] (7th Cir. 1971); United States v. Poole, 379 F.2d 645, 649 (7th Cir. 1967); Doty v. United States, 416 F. 2d 887 (10th Cir.). As early as 1925 the Eighth Circuit Court of Appeals in Barnes v. United States, 8 F.2d 832, 834[3] reversed and remanded a conviction for sale of smoking opium, where neither defendant testified, and the prosecutor in argument stated to the jury that no human being had testified that the government witness lied when he testified that he bought dope from the defendants and, as a result of an objec-

tion made by defense counsel, a colloquy between the Court and counsel emphasized the fact that at the time of the sale only one defendant and the government witness were present. The Court, l.c. 835 said: "The only persons who could contradict the testimony of the government were the defendants themselves, and under such circumstances, involving, as they do, the very gist of the offense charged, we feel that the conduct of the prosecutor cannot be approved."

The dissenting judges in Hutchinson—a 4 to 3 decision—were, without so stating, applying the federal standard to a case where the only witness who could explain the case from the defendant's point of view was the defendant himself, and the argument of the prosecutor that "the only thing the defense brought you is a complete lack of evidence . . . He had his chance," would naturally draw the jurors' attention to the fact that the defendant did not take the stand and testify. Judge Seiler there, 458 S.W.2d, l.c. 560 said: "We thereby encourage the use of devious and indirect argument by prosecutors, who will now know they are safe so long as they do not use the meat-ax approach . . . We are rewarding artifice and encouraging the tactic of getting before the jury indirectly what cannot be done directly." I agree.

The argument in this case, in context, is in my opinion, intended to be of such character that the jury would *naturally and necessarily* take it to be a comment on the failure of the defendant to testify. The enumeration of every possible member of the defendant's family together with his girlfriend—outside the record—emphasized that the "somebody" referred to of necessity had to be the defendant.

What to me is equally disturbing is that the prosecutor was permitted to go outside the record, establish a "red-herring" alibi defense which was unsupported by any evidence whatsoever, and then destroy it to the defendant's disadvantage. To justify

this tactic on the grounds that the state is permitted to argue the failure of the defense to produce witnesses is likewise meritless, for it presupposes that he had such witnesses and there is no evidence to support such a supposition. That this is at least unprofessional conduct is clear. The American Bar Association Standards, The Prosecution Function, § 5.9 (1971) reads: "It is unprofessional conduct for the prosecutor intentionally to refer to or argue on the basis of facts outside the record whether at trial or on appeal, unless such facts are matters of common public knowledge based on ordinary human experience or matters of which the court may take judicial notice."

For the aforesaid reasons I would reverse and remand the conviction for a new trial.