## UNITED STATES v. PECKHAM.

### Cr. No. 579–52.

United States District Court
District of Columbia.
June 25, 1952.

Arthur J. McLaughlin, Asst. U. S. Atty., Washington, D. C., for United States.

David F. Smith, Dorsey K. Offutt, and Charlotte Maskey, all of Washington, D. C., for defendant.

HOLTZOFF, District Judge.

The defendant, Henry L. Peckham, Jr., a physician, was indicted on two charges of committing an abortion. The indictment consists of two counts; the first count charging an abortion committed on May 2, 1951, and the second count charging an abortion committed on January 18, 1952. The same female was involved in both counts.

The jury found the defendant guilty on the first count, and not guilty on the second count. The defendant now moves for a new trial. While the motion sets forth thirty-three grounds for the relief prayed for, the various grounds can be grouped into a few classifications, especially as many of them are more or less repetitious.

One of the objections raised on this motion is that during the cross-examination of Dr. Kilpatrick, of Mount Alto Hospital,

the Court did not permit all of the records of the Hospital relating to the victim of the abortions to be disclosed to defense counsel. Dr. Kilpatrick was asked by Government counsel on direct examination as to what was the cause of the condition of the victim when she was brought to Mount Alto Hospital.. Dr. Kilpatrick expressed the opinion that she was suffering from peritonitis secondary to an induced abortion. The Court directed Dr. Kilpatrick to disclose all those portions of the Hospital files which he used in reaching his conclusion. The Court excluded all other portions of the record as not being relevant and as being confidential because no one had waived the privilege of the patient. The Court particularly excluded any entries in those records relating to prior abortions which the witness had suffered, on the ground that those matters were absolutely irrelevant and could play no part in the case except to embarrass the patient, to whom the records related. In any event, Dr. Kilpatrick's testimony related to the second count of the indictment, on which the defendant was eventually acquitted. Consequently, the alleged error as to those records has become moot.

During the trial the Court was meticulous in seeing to it that the defendant had every opportunity to make his defense or to meet the Government's proof. For example, in connection with the cross-examination of Government witnesses, the Court directed in each instance Government counsel to disclose to defense counsel any prior written statement that had been obtained by the Government or by the police from that witness. Full leeway was given to defense counsel in cross-examining Government witnesses, especially in connection with the key witnesses.

█ The Court observes that this motion does not reiterate an objection that was vigorously raised at the trial to the direction of the Court that five cards relating to names and addresses of patients, and dates of their treatment, be produced by the defendant. The defendant had refused to produce those cards, on the ground that they had been suppressed, together with a great deal of other material which had likewise

been suppressed by an order of the Court. In connection with his direct testimony the defendant used extracts that he copied from those cards, for the purpose of refreshing his recollection on the witness stand. The Court ruled that such use of copies of portions of these cards made it obligatory upon the defendant to produce the originals.

This ruling is sustained by the case of Jewett v. United States, 9 Cir., 15 F.2d 955, 956. In that case the Court, through an eminent jurist, made the following significant statements:

"It would be possible for a corrupt witness to withhold the original memorandum and use notes purporting to be copies, fixed up in such way as to make a much more favorable showing than that made by the original; the opposing party would be powerless to protect himself against such false showing."

The order suppressing this evidence, made prior to the trial, on the ground that it was seized in violation of the Fourth Amendment, did not constitute a reason for declining to direct the production of these few cards. The order of suppression was for the benefit of the defendant. The defendant waived the benefits by himself producing copies of those cards and using them to refresh his own recollection on the witness stand.

█ The defendant contends that it was error to permit the police officers to testify that at the time he was arrested he was asked if he had anything to say, and that he replied, "No statement". It will be borne in mind that both counsel examined the police officers on this point. I see no error in permitting the officers to testify that the defendant refused to make a statement. The defendant was under no legal obligation to make a statement. He had a right to decline to make a statement, but I do not think that there was any error in permitting the jury to know that this was his attitude.

██ The defendant complains that in connection with cross-examination of Government witnesses the Court on numerous

occasions declined to stop the proceedings and permit defense counsel to come to the bench to make a proffer, as he called it, of the testimony that he proposed to elicit from the witness. In the first place it must be observed that, while the Federal Rules of Civil Procedure, rule 43(c), 28 U.S.C.A., contain a provision for offers of proof when testimony is excluded, there is no corresponding provision in the Federal Rules of Criminal Procedure, 18 U.S.C.A. But, be that as it may, a proffer of proof is proper and appropriate in order to make a record as to what examining counsel expects to elicit from the witness, if the witness were permitted to answer the question. Examining counsel can do so, however, only in connection with the direct examination of his own witnesses. He cannot make an offer as to what he expects a hostile witness, who is being cross-examined, to answer in response to a question asked on cross-examination. For this reason the Court did not permit proffers of proof on cross-examination. But more than that, the entire matter is in the discretion of the Court. The Court is of the opinion that defense counsel, Dorsey K. Offutt, abused the right to make proffers, because he continually sought to stop the proceedings and practically to do what is known in the Halls of Congress as filibustering. One of the means that he used was to insist on making a proffer of proof, whenever an objection to a question was sustained, or a question was excluded. The Court felt that this was not being done in good faith and declined to stop the trial for that purpose, time and time again.

■ It is urged that the conviction on the first count is against the weight of evidence. The Court is of the opinion that the evidence fully sustained the verdict of the jury as to the first count. The victim of the abortions testified in detail that the defendant performed it on her. A male friend of hers, who accompanied her to the defendant's house on a prior occasion, and then was with her in a hotel room when the climax of the abortion occurred, corroborated her testimony to a considerable extent. Whether these witnesses were to be believed was a question of fact for the jury. There was a circumstance that strongly supported their testimony. The victim testified that she telephoned the defendant in the early hours of the morning from her hotel room. Records of the hotel were produced showing that a telephone call went through from the room occupied by the woman to the defendant's office at about that time.

■ The motion for a new trial is replete with assertions that the Court made prejudicial remarks. There is no doubt of the fact that the Court harshly and severely rebuked defense counsel, Dorsey K. Offutt, on numerous occasions during the trial. This course was necessary in view of the contumacious, boisterous, discourteous, and belligerent conduct of defense counsel. The Court first attempted to check this abominable conduct by admonitions at bench conferences. This endeavor proved of no avail. If the Court had permitted defense counsel to persist without indicating its displeasure and without indicating to the jury that the Court made an effort to check these serious breaches of decorum, the Court, I think, would have unwittingly cast disrespect upon the administration of justice.

In this connection the remarks of a great jurist, Judge Learned Hand, of the Second Circuit, in the celebrated Communist case, United States v. Dennis, 183 F.2d 201, 225, are pertinent. In that case, too, defense counsel, as here, were guilty of serious misconduct throughout the trial, and as here, they were sentenced at the conclusion of the trial to jail for contempt of Court, except that instead of being sentenced only for ten days, as was done in this instance, the trial judge in the Dennis case imposed sentences of several months' duration. Judge Learned Hand remarked that the question of misbehavior of counsel and the alleged misconduct of the Court cannot be entirely separated. Then he went on to say:

"The trial was punctuated over and over again with motions for a mistrial, often for patently frivolous reasons; by innuendo, and at times openly, the judge was charged with unfairness

and 'judicial misconduct'—often in most insulting language."

And I say this was done here time and time again.

"Those occasions on which the defendants rely to show his intemperate hostility, so far as the record preserves what happened, are completely unconvincing. At times, it is true, he rebuked the attorneys; at times he used language short of requisite judicial gravity; at times he warned them that if they persisted in conducting themselves as they had been doing, he would punish them when the trial was over. (An entirely proper action, for to commit them pending the trial would have broken it up and to be silent might well have misled them.) These cautions they answered most unwarrantably, as threats to prevent the discharge of their duties."

And again Judge Learned Hand states:

"Justice can be as readily destroyed by the flaccidity of the judge as by his tyranny; impartial trials need a firm hand as much as a constant determination to give each one his due. The record discloses a judge, sorely tried for many months of turmoil, constantly provoked by useless bickering, exposed to offensive slights and insults, harried with interminable repetition, who, if at times he did not conduct himself with the imperturbability of a Rhadamanthus, showed considerably greater self-control and forbearance than it is given to most judges to possess."

In order that the jury might not be prejudiced by the misconduct of defense counsel, and necessary rebukes that the Court was forced to administer to him, the Court stated on numerous occasions that the only issue the jury would have to determine was whether the defendant was guilty of the charges on which he was being tried. In its instructions to the jury the Court emphatically stated that the only question for them to consider is the guilt or innocence of the defendant; that many extraneous matters had crept into the trial; that the jury must disregard them and concentrate their attention on the one question presented to them for determination.

I think the jury followed this admonition, as appears from the fact that the jury found the defendant guilty on one count and not guilty on the other, thereby displaying a keen discernment and an impartiality. On the first count there was corroboration of the victim's testimony. On the second count there was very little corroboration. Surely it cannot be said that the jury was influenced by any unpleasant incidents that occurred at the trial, but if it had been so affected that result would have been due entirely to the actions of defense counsel.

The Court is of the opinion that the verdict as to the first count is fully sustained by the evidence, and that there is no reason justifying a new trial.

Motion for a new trial is denied.