**Otto Lewis MEYER, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**John Dwain DUGGER, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

Nos. 19024, 19025.

United States Court of Appeals
Eighth Circuit.

June 18, 1968.

Rehearings Denied Aug. 27, 1968.

Robert G. Duncan, of Pierce, Duncan, Beitling & Shute, Kansas City, Mo., for appellants; Lewis E. Pierce, Kansas City, Mo., on the brief.

Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for appellee; Charles M. Conway, U. S. Atty., and James A. Gutensohn, Asst. U. S. Atty., Fort Smith, Ark., on the brief.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

Otto Lewis Meyer and John Dwain Dugger were convicted under a ten-count indictment, nine of which counts charged transportation of stolen motor vehicles in interstate commerce in violation of 18 U. S.C. § 2312, commonly called the Dyer Act, and one count charging conspiracy to accept and agree to accept motor vehicles stolen in various places in the United States outside the State of Arkansas for the purpose of transporting said vehicles into Arkansas for sale in violation of 18 U.S.C. §§ 2, 371 and 2312. Upon the jury's verdict of guilty on all ten counts, the court sentenced these defendants to a term of two years on each of the first five counts, said sentences to run consecutively, and a sentence of two years on Counts 6 through 10 to run concurrently with the sentences on the first five counts.

The assignments of error forming the basis for this appeal are the asserted insufficiency of the evidence to support the convictions and denial by the trial court of defendants' motion for discovery and inspection under Fed.R.Crim.P. 16(b). We affirm the convictions.

Briefly summarized, the facts disclosed by the evidence reflect that Meyer operated two used car lots in Sedalia, Missouri, and resided on a farm approximately twenty miles southeast of Sedalia. Defendant Dugger originally was employed at the Owens Auto Sales in Independence, Missouri, and later moved to Arkansas and resided near Fayetteville where he was engaged in the business of wholesaling cars in northwest Arkansas. Defendants had become acquainted four or five years prior to the offenses here, and during the period of the alleged conspiracy and transportation of the automobiles involved had considerable business dealings with each other.

In connection with defendants' argument with reference to sufficiency of the evidence, they specifically assert that the deficiency in evidence consisted of failure to prove that the stolen automobiles listed in the indictment were the same automobiles which they allegedly possessed in Arkansas. Defendants make no contention that the automobiles listed in the indictment were not stolen, but only claim that the Government has failed in its proof to show that the cars transported to Arkansas and sold by defendants were identified as the same cars that had been stolen.

Our examination of the record evidence indicates that the identity of the nine cars listed in the indictment was clearly established by the restoration of the true identification numbers by the FBI, which numbers had been ground off. A comparison of the restored numbers revealed that they were in fact the stolen automobiles. It so happened that only one of the nine cars was recovered by the owner, who testified as to the identity of his car. In addition to the identification numbers, he recognized a scratch on the glove compartment and found a magnetic hide-a-key box underneath the V-bar frame containing his extra car and house keys.

It would unduly extend this opinion to detail all of the evidence adduced on each

of the counts, but, as an example, we relate the evidence in Count 6 which charged defendants with transporting or causing to be transported the automobile belonging to Harvey Holloway, and the evidence of the conspiracy charged in Count 1.

Holloway testified that he was the owner of a 1966 Chevrolet Impala two-door hardtop, giving the identification number as described in Count 6, and that he had compared the number with the number shown on his Missouri title which was introduced into evidence, and it was the same; that the automobile was willow green in color; was stolen from the Montgomery Ward parking lot in Kansas City, Missouri on August 8, 1966 and recovered in Fort Smith, Arkansas where it still had on it a magnetic hide-a-key box which contained his car and house keys as well as a key to a house he owned on the Lake of the Ozarks. As further identification, he identified the car by a scratch on the door of the glove compartment caused by a turning of the key.

On the day following the theft of the car, it was transported to Fort Smith, Arkansas by defendant Meyer's son, who testified that defendant Dugger gave him $25.00 to drive it from Sedalia to Fort Smith and bought him a bus ticket back home. On that same day, Dugger drove another car to Fort Smith and traded both cars to the Farmer Auto Sales for a third car and the cash difference. The purchaser stated that he had met defendant Dugger about 1962, and had seen him from time to time since then at automobile auctions. Farmer received from Dugger a Missouri title in the name of Meyer Auto Sales, endorsed by Otto Meyer, for each of the two cars and wrote the serial numbers shown on the titles on his check, one of said numbers being later determined by the FBI to be an altered number on the car belonging to Mr. Holloway.

Mrs. Mae Walker, owner of a title service company in Jefferson City, Missouri, which she operates as a service to automobile dealers to expedite procurement of titles, testified that on June 28, 1966 she received an application from Meyer Auto Sales signed by Otto Meyer for a title for a 1966 Chevrolet two-door Impala hardtop along with a supporting document purporting to be a Kansas bill of sale from the Van T. Chevrolet Company in Topeka, Kansas, showing the altered identification number of the car described in Count 6 of the indictment. This instrument was purportedly executed by Lee Lefever as Sales Manager and notarized by Frank K. Goldfuss, but both men testified that their purported signatures were forgeries. Mrs. Walker obtained the title as requested and mailed it back to defendant Meyer.

A field representative with the Motor Vehicle Division of the Missouri Department of Revenues made a photostat of the microfilm records of which he was the official custodian and identified the photostat of the bill of sale and application for title which Meyer Auto Sales filed with the Department to obtain the title for the Chevrolet involved.

A special agent for the FBI testified that his official work in connection with the cars involved was to examine the vehicles and observe the true numbers after they had been restored. He made this examination on the Chevrolet involved in Fort Smith. After the removal of the plate on which the altered public identification number appeared, he assisted men from the FBI laboratory and they were able, by means of using certain chemicals, to restore a number that apparently had been ground off. This technique utilized a liquid compound which, when hardened, was removed, the cast thus made bearing an impression of the true identification number. A fingerprint power lift was made which also showed the true identification number of the automobile to be the number of the Chevrolet involved.

Such identification of an automobile by its true identification number, as was done here, is positive proof of its identity and no additional evidence is required. United States v. Wheeler, 219 F.2d 773 (7th Cir. 1955).

■ Defendants objected to use of photostats of the bill of sale, application for title, etc., but this type of evidence is clearly permissible under 28 U.S.C. § 1732. See Thompson v. United States, 334 F.2d 207 (5th Cir. 1964).

■ Proof of the identity of a stolen automobile as one transported to another state by a defendant in a Dyer Act case by a comparison of the identification number is not required, however, when it can be identified by other means of proof. Welch v. United States, 360 F.2d 164, 165 (10th Cir. 1966); Massey v. United States, 358 F.2d 782, 786 (10th Cir. 1966).

It is thus seen that Holloway's car was sufficiently identified by either the true identification number or by the scratch on the glove compartment and the magnetic hide-a-key box. The cases cited by defendants to establish that the identity of the cars was not made are factually inapposite as they neither contain proof by identification number nor other identifying features peculiar to a particular automobile.

■ We have carefully considered the evidence adduced in connection with the other counts and are thoroughly convinced that the evidence presented in each count was sufficient to establish the identity of the automobiles which defendants transported or caused to be transported into Arkansas, and that it was sufficient in all respects to sustain the convictions.

■ Additional to the foregoing, there is an abundance of proof of conspiracy. Defendants made false statements and misrepresentations to Farmer and others concerning various cars. Although Meyer denied at the trial that Dugger worked for him, Cecil Farmer of Farmer Auto Sales testified that when he bought a 1965 Cadillac from Dugger on an open title from Meyer Auto Sales Mr. Meyer told him on the telephone to make the check payable to defendant Dugger—that he had him "under a heavy bond, and he is a good boy, and said just go ahead and make it payable to him." On another oc-

casion, defendant Dugger asked Mr. Farmer to verify to a Fort Smith bank that he worked for defendant Meyer so that he could cash a check which Farmer had made payable to Meyer Auto Sales, since Dugger had given Farmer an open title on the car from the Meyer company, and Dugger endorsed the check as manager of the Meyer company. Both Meyer and Dugger represented the 1965 Cadillac sold to Farmer Auto Sales as a car which Meyer had bought new from Knipp Motor Company in Jefferson City, Missouri. Farmer called Knipp and verified the fact that Meyer had bought a 1965 Cadillac bearing that number from Knipp, but it later developed that the car sold to Farmer was the stolen automobile described in Count 3, and the public identification number had been changed to the same number as the car Meyer purchased. Defendants gave Farmer a duplicate title and no warranty book, stating that Meyer lost the original title on it. Mrs. Walker testified that she procured a duplicate title for Mr. Meyer upon his representation that he had lost the original.

Farmer also bought a 1966 Cadillac from Dugger which Meyer purportedly bought new. He received an original title on the 1966 Cadillac, but it was later discovered to be the stolen automobile described in Count 4. A duplicate title on this car was obtained by Meyer and used to sell the 1966 Cadillac which he actually purchased.

The proof that the numbers on the stolen Cadillacs had been altered to fit the numbers on the cars which defendant Meyer had bought new and that duplicate titles had been obtained for use in disposing of the cars indicated a plan or conspiracy for Meyer to buy one Cadillac new, obtain a duplicate title for it, and then use the two titles to sell the car he purchased and a car of the same make, model and body style which had been stolen and the numbers altered to fit the title. Also, there was evidence of a conspiracy by defendants to alter the true identification numbers on the cars described in the other counts, and to repre-

 

sent some of them as cars which were damaged by a tornado in Topeka, Kansas and rebuilt.

All of the related evidence, and much more, amply suffice to justify a jury in finding a criminal conspiracy and we, as a reviewing court, must view the evidence most favorably to sustain the jury's verdict. Love v. United States, 386 F.2d 260, 264 (8th Cir. 1967); Lee v. United States, 363 F.2d 469, 475 (8th Cir. 1966); Canaday v. United States, 354 F.2d 849 (8th Cir. 1966); Babb v. United States, 351 F.2d 863, 866 (8th Cir. 1965); Jaben v. United States, 349 F.2d 913 (8th Cir. 1965).

The only other assignment of error relates to the trial court's refusal to grant defendants' motion for discovery and inspection of certain records under Fed.R.Crim.P. 16(b). The learned trial court held that the motion was clearly insufficient. In any event, under the rule the production of such records is discretionary with the trial court, and there was no abuse of discretion here. The defendants urge that the books and records seized by the Government at Meyer's garage were necessary in the preparation of their defense, but we are not persuaded. A Government witness who executed the search warrant testified that he did not seize, or even find, ledgers or records of that sort. While the Government did seize some bank statements, Meyer himself testified that he always paid cash for cars, so it is difficult to see how his cancelled checks would have been of any value to him. Neither was it shown that there were any other papers seized which would have been beneficial in the preparation of the defense.

While the Government was under no legal compulsion to furnish the records in its possession, yet under a motion for bill of particulars it did in response furnish defendants a work sheet prepared by the FBI containing information concerning thirty-nine automobiles alleged to have been transported by defendants, identifying the automobiles on the work sheet which corresponded to the cars in each count of the indictment by the chronological number on the list. This work sheet information included a description of each car, the public identification number, the true identification number, the title number, the date issued, the date and place stolen, the name of the person or company to whom it was sold, the date it was sold, the name and address of the person or company to whom it was resold and the name and address of the person or company in whose possession it was located. This information amply sufficed to permit defendants to adequately prepare for trial and consequently no prejudice could possibly have resulted to defendants by the court's refusal to grant their motion, which, as we have already noted, was discretionary.

The judgments of conviction are affirmed.