**Tommie Lee LATHAM, Appellant,**

v.

**UNITED STATES of America,**
.Appellee.

**No. 19140.**

United States Court of Appeals
Eighth Circuit.

Feb. 13, 1969.

Thomas V. Connelly, of Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for appellant.

J. Roger Edgar, Asst. U. S. Atty., St. Louis, Mo., for appellee, Veryl L. Riddle, U. S. Atty., on the brief.

Before MATTHES, MEHAFFY and HEANEY, Circuit Judges.

MEHAFFY, Circuit Judge.

Tommie Lee Latham, defendant-appellant, appeals from a judgment of conviction after jury verdict finding him guilty of the crime of possession of stolen goods from an interstate motortruck shipment knowing the same to have been stolen in violation of 18 U.S.C. § 659. Specifically, the indictment charged that on or about August 28, 1967, Latham and a codefendant, Joseph Johnson, had in their possession two reels of armored copper cable of a value exceeding $100.-00, knowing the same to have been stolen from a motortruck and trailer belonging to Flash Motor Service of St. Louis, Missouri, which cable constituted a part of an interstate shipment of freight from Western Electric Company in St. Louis, Missouri to the Southwestern Bell Telephone Company at Harrisburg, Arkansas.

Defendant assigns as error: (1) the insufficiency of the evidence to support the judgment and (2) the giving by the court of an instruction that defendant could be convicted as an aider or abettor of the crime charged in the indictment. In our view, there is no merit in either of defendant's contentions and, therefore, we affirm the judgment of conviction.

### Sufficiency of the Evidence

Defendant did not take the witness stand and offered no evidence in his defense. His codefendant, Johnson, testified that he was engaged by the owner of a salvage yard to cut the cable and haul it and that he had no knowledge it was stolen. Johnson was also convicted and he and Latham were each sentenced to a term of three years; however, Johnson has abandoned his appeal. There is no dispute with regard to the fact that the cable was recently stolen from an interstate shipment.

In cases of this kind, it is settled law that in determining the sufficiency of the evidence to justify a guilty verdict, we must sustain the verdict if there is substantial evidence in support thereof when viewed in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Moodyes v. United States, 400 F.2d 360, 363 (8th Cir. 1968); Hanger v. United States, 398 F.2d 91, 108 (8th Cir. 1968); Meyer v. United States, 396 F.2d 279, 283 (8th Cir. 1968). Viewed in this light, we briefly summarize the pertinent facts.

Kelsay, the owner of a salvage yard occupying approximately three acres of ground two miles outside of Mexico, Missouri, testified that on Sunday night, August 27, 1967, he was visited at his home, located on his business property, by codefendant Johnson, who requested permission to clean some metal on the premises. Kelsay showed Johnson a place down the hill from his home which he used for burning old cars where he told him this could be done, and, while Kelsay did not see the material at this time, he did see the clearance lights on the top of a truck parked across the railroad tracks which ran adjacent to his property. As Kelsay was walking back to his residence, he observed defendant on his property near his house and spoke to him. After entering the house, Kelsay heard a truck pull onto his property. In a few minutes, Johnson knocked on his door and was admitted and the two drank coffee until a truck was heard going back over the tracks, at which time Johnson stated that he had to leave as they were going. Later that evening, Kelsay took a load of scrap material to Kansas City, Missouri and returned home on Monday about four o'clock in the afternoon. Soon thereafter Johnson came to Kelsay's home and borrowed a cutting torch. About an hour later, Kelsay went down the hill to where Johnson was working and observed a big pile of new-looking wire that had been cut up. At this time, Johnson was cutting up the metal reels of copper wire with the cutting torch and this caused Kelsay to become suspicious, whereupon he drove to Mexico, Missouri and notified the authorities.

Thereafter, Deputy Sheriff Harold Sulgrove and State Trooper Charles Walker proceeded to Kelsay's salvage yard where they observed a truck and trailer and a great amount of cable. Johnson was cutting cable and throwing it on the trailer, and altogether there were five men engaged in this operation. Deputy Sheriff Sulgrove recognized Latham as one of the men as did Trooper Walker. They both testified that as soon as their patrol car pulled into plain view, defendant looked at them and he and several others immediately ran away. The officers tried to catch them before they left the premises but without success. Johnson, in testifying on his own behalf, admitted the visit to the salvage yard on Sunday, but testified that Kelsay requested him to haul some metal for him and to cut up some cable which he had on spools. Johnson further testified that he needed help so he returned to St.

Louis and procured the assistance of defendant, who in turn picked up two more helpers, and drove these two men in his car to the salvage yard. Johnson said he drove to the yard in a rented open-top, open-end tractor-trailer in the company of another man. This was on Monday following the Sunday night on which Johnson had visited Kelsay at his salvage yard, at which time the defendant was seen on the premises.

Both the Deputy Sheriff and the State Trooper positively identified defendant as one of the men engaged in the operation at the salvage yard, and both testified that when defendant saw them he turned and ran into the weeds. Trooper Walker also testified that there was a 1959 white Pontiac convertible parked there which was later identified as belonging to defendant.

The metal reels upon which the cable was wound had the name of Western Electric Company imprinted thereon. When the company was contacted, officials from Western Electric and also from Flash Motor Service, the carrier, came to the salvage yard and positively identified the reels of cable found there by the serial and code numbers shown thereon, which corresponded with the numbers on the bill of lading consigning the shipment to Southwestern Bell in Harrisburg. They testified that the cable had been loaded on the Flash Motor Service trailer on Friday afternoon, August 25, 1967 and left on a parking lot on Industrial Drive in St. Louis to be picked up the following Monday and carried to its destination. When the driver arrived at the lot on Monday morning, however, the trailer, which was a covered van, and its contents were missing. The company officials discovered it parked on the side of the highway near Wentzville, Missouri as they went to Mexico on August 29, 1967 to identify the cable. Since it was not in dispute that the cable was stolen from an interstate shipment, defendant makes the contention that the evidence only amounted to a showing of his presence at the scene of the illegal activity and his flight to escape arrest. This argument is falsely premised, however, since at the time the officers arrived defendant was engaged in the cutting of the copper cable as well as the reels with the name Western Electric Company imprinted thereon.[1] This evidence alone

---

[1.] Defendant seizes upon one statement in the testimony of State Trooper Walker to the effect that when he saw Latham "[h]e was standing near the rear of the truck", and argues that he was not actually seen cutting up the cable. Deputy Sheriff Sulgrove, however, testified as follows:

(CROSS-EXAMINATION)

"Q Did you say when you came into Mr. Kelsay's yard there were several men cutting up cable?

"A Yes.

"Q How many were there, do you know? How many men?

"A I—it was a quick glance, but I'd say five.

"Q How many men ran?

"A Three men ran.

"Q Did Mr. Johnson run?

"A No, sir."

Elsewhere in the Record, Deputy Sheriff Sulgrove further testified:

(DIRECT EXAMINATION)

"Q Did you observe Mr. Johnson at this time?

"A Yes, sir.

"Q What, if anything, was he doing?

"A He was cutting cable and throwing it on the trailer.

"Q That was parked there?

"A That was parked there, yes, sir.

"Q Did you observe Mr. Latham at this time?

"A Just for a moment, yes, sir.

"Q Do you see Mr. Latham in the courtroom this morning?

"A Yes, sir.

"Q Will you point him out, please?

"A Mr. Red. (Indicating.)

"MR. EDGAR: If the Court please, let the record show that the witness has indicated the defendant Tommie Lee Latham.

"THE COURT: Record may so show.

"Q (By Mr. Edgar) What, if anything, did Mr. Latham do?

"A He and several other subjects ran immediately back toward—through the piled cars and the horseweeds back toward the Lee Kelsay residence.

"Q Did Mr. Latham have a look at you before he took off running?

"A Yes, sir."

Also, according to the testimony of Latham's codefendant, Johnson, Latham was

**4**

establishes unexplained possession of recently stolen goods. Also overlooked is the fact that defendant accompanied co-defendant Johnson to the salvage yard on the night before they were apprehended cutting the metal. The destruction of the new cable and the original reels, being admittedly property stolen the weekend before from an interstate shipment, would lead any reasonable person to conclude that defendant was engaged in the criminal act for which he was convicted.

Coupled with the above activity was the immediate flight of defendant into the weeds after the arrival of the officers which in itself was indicative of defendant's guilt. McClard v. United States, 386 F.2d 495, 500 (8th Cir. 1967). Indeed, the jury was justified from the direct as well as the circumstantial evidence in finding defendant guilty and it could hardly conclude otherwise without some believable evidence accounting for defendant's presence and participation in the cutting up of the copper cable admittedly stolen. Cf. Aron v. United States, 382 F.2d 965, 970–971 (8th Cir. 1967); Whitehorn v. United States, 380 F.2d 909, 912 (8th Cir. 1967); Minor v. United States, 375 F.2d 170, 173 (8th Cir. 1967).

We find the evidence in its totality amply sufficient to justify the jury's verdict.

### The Court's Instruction that Defendant Could Be Convicted as an Aider or Abettor

In this case, the indictment did not include a charge of aiding and abetting, but it is settled law that such an indictment does not prohibit an instruction or conviction for aiding and abetting. This court said in the recent case of Theriault v. United States, 401 F.2d 79, 85 (8th Cir. 1968):

> "That the indictment failed to charge a violation of 18 U.S.C. § 2 as an aider

and abettor and that the defendant was convicted of a crime with which he was not charged. We, of course, have no way of knowing whether the jury reached its conviction conclusion through the aiding and abetting route. But even if it did, Nassif v. United States, 370 F.2d 147, 155 (8 Cir. 1966), is adverse authority to the defense position. This court there said 'An aider and abettor may be indicted directly with the commission of the substantive crime and the charge may be supported by the proof that he only aided and abetted in its commission.'"

The judgment of conviction is affirmed.

---

hired by him to help cut up the cable, and Johnson testified that when they arrived at Mr. Kelsay's salvage yard on Monday, the 28th, "we went in and started cutting." Whether or not Latham was seen

by the officers in the act of actually cutting the cable, there is certainly sufficient evidence to sustain a finding that he was engaged in the cutting operation.