**Richard Allen TANNER, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19036.**

United States Court of Appeals
Eighth Circuit.

Oct. 9, 1968.

Rehearing Denied Nov. 5, 1968.
Certiorari Denied Feb. 24, 1969.

See 89 S.Ct. 922.

Kenneth K. Simon, Kansas City, Mo., for appellant; Richard Allen Tanner, pro se.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee; Calvin K. Hamilton, U. S. Atty., and William A. Kitchen, Frederick O. Griffin, Jr., Asst. U. S. Attys., Kansas City, Mo., on brief.

Before VAN OOSTERHOUT, Chief Judge, HEANEY, Circuit Judge, and REGISTER, Chief District Judge.

REGISTER, Chief District Judge.

Appellant Richard Allen Tanner (hereinafter referred to as Tanner or Appellant) was tried by a jury on a two-count Informantion. In Count I it was charged that "on or about August 28, 1966, in the Western Division of the Western District of Missouri, (Tanner) transported and caused to be transported in interstate commerce from Grove, Oklahoma, to Kansas City, Missouri, a stolen motor vehicle, to wit: a 1965 Chrysler, and he then knew said motor vehicle to have been stolen, in violation of Section 2312, Title 18, United States Code." In Count II Tanner was charged with a violation of Section 2313, Title 18, United States Code—the receipt by him of said stolen motor vehicle, which was moving as interstate commerce, he then knowing said motor vehicle to have been stolen. At the close of all of the evidence, Count II was dismissed, and the case submitted to the jury under appropriate instructions, solely on Count I. This appeal is from his conviction by

the Jury on Count I and the resulting judgment entered and sentence imposed.

During all proceedings in this case, Tanner has been represented by court-appointed counsel. Trial counsel was a member of the staff of the Legal Aid & Defender Society of Greater Kansas City. In the preparation of brief on this appeal, and for oral argument before this Court, different counsel represented Tanner, under appointment by this Court pursuant to application of Tanner. For reasons which will become apparent, we will first consider the contentions of Tanner which are before us as a result of brief and argument of such latter counsel.

Tanner's first contention on this appeal is that he "was denied substantive due process as a result of ineffective representation by his Court-appointed defense counsel." As one specific basis of the charge of "ineffective representation" Tanner contends that his counsel "failed to preserve error during course of trial by timely and proper objections." The objections which Tanner contends should have been made, allegedly refer to "hearsay," "leading questions" and "opinion testimony." In Appellant's brief after reference to and discussion of instances of such alleged improper failure on the part of trial counsel to make objections, we find the following significant statement: "Appellant readily concedes however that this might well be construed as a matter of trial tactics and strategy constituting only a procedural matter and of no genuine substance." With this conclusion we agree.

■ We have carefully examined the transcript of the trial proceedings. Counsel's failure to make the objections referred to was obviously the result of his considered exercise of judgment involving trial tactics, and we are satisfied that no violation of any substantial right of Tanner, or prejudice to him, occurred by reason thereof.

As the only other specific basis of the charge of "ineffective representation" Tanner states that his lawyer "failed to preserve possible assignments of error by failing to file any motion for new trial." Tanner argues that, because of such failure, he was denied "his vital right to appeal," and, proceeding with this argument, contends that "failure * * * to file a Motion for New Trial and preserve thereby all possibility of error for appeal constitutes such ineffective representation as to render Appellant the victim of a farce and a sham within the purview of the *Malfetti* and *Hendrickson* cases, supra, to the effect that his substantive constitutional rights were denied him."[1] While conceding that a convicted felon's retrospective dissatisfaction with counsel is not an unusual occurrence, and in itself is no indication of denial of substantive due process, Tanner contends that this failure on the part of his trial counsel so violated the standard required for effective representation as to "shock the conscience of the Court." Yet the only alleged "point of error" which Tanner contends might properly have been raised had such motion been made, was insufficiency of the evidence as to his knowledge, at the time he transported said vehicle in interstate commerce, that the vehicle had been stolen.

■ At the close of all of the evidence, defense counsel made a motion for a directed verdict,[2] which was

---

1. See general rule expressed in United States v. Malfetti, 125 F.Supp. 27 (D.C. N.J.1954); Hendrickson v. Overlade, 131 F.Supp. 561 (D.C.N.D.Ind.1955); and Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, 669 (1945), cert. den. 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002.

2. At the time of the trial, Rule 29(a) F.R.Crim.P. provided in part that "Mo-

tions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place"; however, it is apparent that the trial court considered the motion made as being one for judgment of acquittal, based on alleged insufficiency of the Government's evidence.

denied. Had defense counsel not taken this action, the question of the sufficiency of the evidence would not have been properly preserved upon appeal. United States v. Jonikas, 187 F.2d 240 (7 Cir. 1951), and United States v. Earnhardt, 153 F.2d 472 (7 Cir. 1946), cert den. 328 U.S. 858, 66 S.Ct. 1350, 90 L.Ed. 1629.

■ Although the right to appeal from a conviction in a criminal case is within the protection of the Constitution (Brown v. Looney, 249 F.2d 61, 62 (10 Cir. 1957)), "Due process of law does not require that the trial court see to it that a defendant's attorney makes a motion for a new trial and perfects an appeal. An appeal is not necessary to due process of law." DeMaurez v. Swope, 104 F.2d 758, 759 (9 Cir. 1939). In the instant case, however, it is clear that defense counsel's omission to file a motion for new trial neither prevented the appeal nor eliminated therefrom the "point of error" Tanner states could properly have been raised therein. The merits of such alleged "point of error" will be later considered and discussed in this opinion.

■■ During oral argument counsel for Tanner raised the question of the propriety of trial defense counsel's making the motion for directed verdict in the presence of the jury, and cited United States v. Coke, 339 F.2d 183 (2 Cir. 1964) as holding that this is "contrary to the better practice." The motion made in this manner in *Coke* was preceded by highly unusual circumstances which occurred during trial and were such as to cause the appellate court to believe might reasonably have caused the jury to imply from the trial judge's abrupt denial of the motion "that the defense was incompetent and a sham and that the jury should convict." No similar circumstances had here occurred and no basis for such an inference existed at the time the motion was made in this case. While we agree with the Court in *Coke* that the better practice is to make such motion out of the presence and hearing of the jury, we consider it very questionable whether, upon the record of this case, making this motion in open court was error, but if it was, we are convinced it was not prejudicial.

■ Appellant's remaining contention (as briefed and argued by counsel) is that the trial court committed error in denying his motion for directed verdict (judgment of acquittal) because of the insufficiency of the evidence to support a jury's finding that he knew the car was stolen. The applicable general rules here involved are well established. Maguire v. United States, 358 F.2d 442, at page 444 states:

"In considering the motion for acquittal, the trial court must view the evidence in the light most favorable to the government, together with inferences which may fairly be drawn therefrom, and then determine whether there is substantial evidence from which a jury might properly find the accused guilty beyond a reasonable doubt. This standard is applicable to each of the several elements of the offense. Cartwright v. United States, 10 Cir., 335 F.2d 919. To convict under 18 U.S.C. § 2312, the government must prove (1) that the vehicle was stolen, (2) that it was transported in interstate commerce, and (3) that such transportation was with knowledge that the vehicle was stolen. Allison v. United States, 10 Cir., 348 F.2d 152." Maguire v. United States, 358 F.2d 442, (10 Cir. 1966), cert. den. Giles v. U. S., 385 U.S. 870, 87 S.Ct. 138, 17 L.Ed.2d 97.

No question is raised as to the sufficiency of the evidence concerning the first two elements of the offense. Conclusive evidence that the motor vehicle here involved was stolen during the night of August 28, 1966, in Grove, Oklahoma, was in effect stipulated into the record. Sufficient evidence that the defendant transported this vehicle in interstate commerce (from Oklahoma to Missouri) is in the record. Brief reference will be made to some of the evidence relevant to the remaining element.

In August, 1966, Tanner was living in an apartment in Kansas City, Missouri, with a roommate and friend, one Manis. Tanner owned and was using a 1953 Plymouth automobile bearing license plate WY 75271, a Kansas (Wyandotte County) license plate which had been issued to Tanner. Manis owned and operated a 1959 Chevrolet automobile. In the latter part of that month, Tanner told Manis they were going to drive to Bartlesville, Oklahoma, to visit Tanner's parents. Before leaving, Tanner drove his Plymouth to a salvage yard in Kansas (after having his certificate of title thereto notarized for purpose of sale) and sold it to the salvage dealer. Manis drove his Chevrolet to this yard, and while he (Manis) was there, Tanner removed his Kansas license plates from the Plymouth and put them in the back seat of the Chevrolet. Manis then drove his vehicle, accompanied by Tanner, to the home of the latter's parents in Oklahoma. After visiting a few days with his parents and some other relatives, Manis and Tanner drove to the home of Tanner's married cousin (whose first name was Melba) which was a short distance from Bartlesville, and also in Oklahoma. They remained there one night, Manis sleeping in his automobile because of insufficient accommodations in the home. Early the following morning Manis was awakened by a 1965 cream-colored Chrysler automobile, occupied by the driver only, being driven into the driveway. Manis saw Melba come out of the house, heard her call to the driver of the Chrysler as "Jack," and saw them drive off together. There were no license tags on this Chrysler. After a few minutes, Melba and Jack returned in the Chrysler; Melba got into her automobile (a green Plymouth), they again left—Jack in the Chrysler and Melba in the Plymouth—and both returned in a few minutes in the Plymouth. During all of this time Tanner was in the house. Manis testified that he was present a short time later and heard a conversation between Tanner and Jack and Melba concerning the Chrysler and the sale thereof to Tanner. According to the testimony of Manis, Jack did not say he owned the Chrysler, stated there were no papers for the Chrysler, did not say where he had acquired it, or where it had come from, said he wanted to sell it and wanted $500 for it, and in the discussion it was agreed it would be taken to Kansas City. According to Manis, Tanner stated he wanted to buy the car but didn't have the $500, and Jack said, "Well, that would be all right, you could pay us later for it." Further testimony is that Tanner, Melba and Manis then took Jack to a small town some 30 or 35 miles from her home, left him there, and returned to her home, and that late that evening, at about time it was getting dark, Manis drove Tanner to the Chrysler, where it was parked alongside a gravel road about 3 miles from Melba's home; "they" (Tanner and Manis being the only persons present) took the Kansas license plates from the rear seat of Manis's vehicle and put them on the Chrysler, after which Manis drove his Chevrolet and Tanner drove the Chrysler to Kansas City. As a part of the stipulated facts, it was stipulated that the owner of the Chrysler was paid by his insurance company, for theft loss, the sum of $2700. After the Chrysler was driven to Kansas City, it was operated from time to time by Tanner and also by Manis. According to the testimony of various witnesses, at different times Tanner stated that this vehicle was owned by his mother, that it belonged to him, and that it belonged to his aunt, and instructed Manis to inform Tanner's relatives that it belonged to Manis's sister. At the time Tanner was arrested, he was in the Chrysler in company of Manis who was driving it, and attached to it were the license plates which had been previously issued to Tanner for the 1953 Plymouth. The Chrysler was conclusively established to be the stolen motor vehicle.

■ From an examination of the record, including portions of the testimony stated in the preceding paragraph,

it is readily apparent that there was sufficient evidence going to the essential element or ingredient of the offense here under discussion, and that such evidence provided an adequate basis for a reasonable and permissible inference that Tanner knew this vehicle was stolen at the time he took possession of it in Oklahoma and transported it in interstate commerce to Kansas City. We are satisfied that the evidence received furnished a reasonable and ample basis for the jury's inference of the defendant's guilty knowledge. " * * * (W)e, as a reviewing court, must view the evidence most favorably to sustain the jury's verdict." Meyer v. United States, 396 F.2d 279, 283 (8 Cir. 1968).

Pursuant to request of Tanner, and based upon his expressed dissatisfaction with the services of his court-appointed lawyer for this appeal, this Court permitted him to file a supplemental brief, pro se. This is an unusually lengthy brief, and contains several pages of authorities cited in support of his contentions. It obviously is the result of diligent effort, painstaking research, and tenacity of purpose. No purpose would be served, and this opinion would necessarily be unduly lengthened, by a detailed discussion of each of Tanner's numerous complaints which in essence charge his trial lawyer generally and specifically with incompetence, ineffectiveness and inadequate representation, and the trial court with "plain error." We have carefully examined the entire record and each complaint in the light of that record. Some of such charges or complaints are patently devoid of merit. Others are of such a nature as to warrant special consideration.

▉ We note that the trial court, in its Order denying Tanner's written application for appointment of "new counsel" for the appeal herein, stated: "Trial counsel in this case was completely competent * * *." Tanner contends that he was "substantially prejudiced" by his trial lawyer's failure to "properly protect appellant's right of confrontation and cross-examination of Mr. Virgil

Boswell." The record discloses the following facts: Trial had been set to commence on April 10, 1967. At that time Tanner and his lawyer appeared in the Chambers of the trial court, with the prosecutor, for a pretrial conference requested by the Appellant. One week previously Tanner had been arraigned, and had requested and received a continuance to try to procure some witnesses. Although his lawyer had, at the time of the arraignment, requested Tanner to give him the names and addresses of witnesses whom he wished to be subpoenaed, he had failed to do so, and had failed to see his lawyer thereafter until the morning of April 10th. At this pretrial conference, Tanner requested another one-week continuance. The trial judge considered this to be an oral motion for continuance, and granted it. At that time, it appeared that the only witness for the prosecution who was not local was Virgil Boswell, a businessman who had driven from Oklahoma to testify, and who was anxious to return home. The prosecutor stated that Boswell would testify that he was the owner of the stolen car involved in this case, and had not given permission to anyone to drive it, and inquired whether the defense would be willing to enter into a stipulation, to be used in the trial, as to Boswell's testimony, so as to eliminate the necessity of another trip. When one of defense counsel asked Tanner if such a stipulation would be agreeable with him, he answered: "I would rather have that stipulation." Thereafter the prosecutor dictated into the record what Mr. Boswell would testify to, in the presence of Tanner, counsel, and the Court. The following colloquy then took place:

"THE COURT: Now, Mr. Tanner, that is what the District Attorney says this man would testify this morning. He is here this morning. Do you have any questions about his testimony?

THE DEFENDANT: No sir.

THE COURT: Are you willing to stipulate—that that can be stipulated so that he wouldn't have to come back here?

THE DEFENDANT: Yes, sir."

At the trial the stipulated testimony was read into the record. Boswell's testimony, in substance, was that he was the owner of the vehicle involved, that it had disappeared at a time and from a place where parked, that he had given no permission for another to drive it, that he had received $2700 from his insurance company for his loss, and that he did not know either Tanner or Manis. The United States not only did not contend or attempt to prove that Tanner (or Manis) was the person who had stolen the vehicle, but all of the evidence was to the contrary. Tanner's present contention is patently frivolous.

Tanner strongly urges, as further evidence of the gross inadequacy of counsel's representation, the failure of counsel to take such action as he (Tanner) now considers would have been appropriate for his protection if called as a witness. Just what such "protective" action trial counsel could or should have taken is not clear. Tanner argues:

> "Appellant argues before this Honorable Court that common fairness dictated that appellant have the right to tell his side *without* suffering an inevitable fatal prejudice derived from the negative use of appellant's prior convictions.[3] The record clearly shows that appellant has positively stated his innocence. Appellant could have honestly explained facts in the record *which have gone unexplained* because *only* this appellant could controvert such perjured facts; * * *";

and,

> "The uncorroborated perjury of witness MANIS was allowed to stand 'uncontroverted' for two reasons: First, (not here relevant); and, secondly, because the government forced this appellant to remain silent by holding appellant's prior convictions over his head.

The government *created* this situation of inevitable prejudice. From the inner sanctum of their office they conceived the plan to coerce this appellant into silence by the use of a past record which would be fatally prejudicial * * *."

At the trial Tanner did not testify. The record is silent as to the reason for his decision. A reasonable inference would be that it was pursuant to advice of his counsel, and the result of his own judgment, in view of his experience. There is absolutely nothing in the record that indicates Tanner expressed to his counsel, or the Court, a desire to testify. His quoted statements in support of his present contention (as is much of the alleged factual basis of other contentions) are outside of the record and may not be considered by us. It should be emphasized that we do not have before us a proceeding in the nature of a collateral attack, the pleadings in which lay an adequate foundation for an investigation of the competency of counsel, or the conduct of the prosecutor. Hendrickson v. Overlade, supra. This is an appeal from judgment of conviction, and "We cannot, of course, concern ourselves with anything which does not appear in the record." Jackson v. United States, 131 F.2d 606, 607 (8 Cir. 1942).

Tanner also contends that he was substantially prejudiced by the instructions to the jury—that, in particular, by including therein the usual "accomplice" instruction, the trial court was guilty of "plain error." Not only was no objection made by defense counsel to this, or any other portion of the instructions, but this instruction was included in the charge at the specific request of defense trial counsel and over the objection of the prosecutor. This issue was not preserved in compliance with Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., and the general rule is that "The failure to properly object to the instructions before the jury retires to consider its verdict precludes raising any objection to the ju-

---

3. Tanner had a criminal record of several prior felony convictions.

ry instructions on appeal." Hart v. United States, 396 F.2d 243, 246 (8 Cir. 1968). Conceding this to be true, Tanner directs our attention to Cross v. United States, 347 F.2d 327 (8 Cir. 1965), in which this Court stated at pp. 329–330:

"At the outset of our consideration of this appeal we are met with the problem that the instructions complained of were only given to the jury by the court below after appellant's initial objection thereto was withdrawn, thus bringing into operation Rule 30, F.R.Cr.P., which provides, in part: 'No party may assign as error any portion of the charge or omission therefrom unless he objects thereto * * * stating distinctly the matter to which he objects and the grounds of his objection.' There is no question, however, that this rule does not preclude our consideration of plain error in the giving of instructions under Rule 52(b), F.R.Cr.P., in order to prevent a miscarriage of justice."

See, also, Cave v. United States, 159 F. 2d 464 (8 Cir. 1947), cert. den. 331 U.S. 846, 67 S.Ct. 1732, 91 L.Ed. 1856, rehearing den. 332 U.S. 786, 68 S.Ct. 34, 92 L.Ed. 369. In our view the record discloses no basis for application of any exception to the operation of said Rule 30. The charge adequately and correctly instructed the jury as to the applicable law.

Relying on Desmond v. United States, 345 F.2d 225 (1 Cir. 1965), Tanner contends that the United States Attorney, in his final argument to the jury, improperly commented upon his (defendant's) failure to testify. In Desmond, the government prosecutor, after referring to a certain portion of the evidence, stated: "Those are the facts, the evidence. Incidentally, may I say to you that the evidence stands unimpeached and uncontradicted." Counsel for defendant immediately objected, stating that this was a comment upon appellant's failure to testify. The objection was overruled, but, in the final charge to the jury, the Court told the jury that no inference should be drawn against ap-

pellant from his failure to take the stand. The appellate court held that the statement constituted comment upon appellant's failure to testify, that it was improper, that it was not cured by the charge, and that "correction of error should be as prompt and timely as possible * * *. The appellant promptly objected. The remedy, to be fully effective, should have been administered equally promptly."

The record herein discloses that the United States Attorney, during final argument, and while commenting about the license plate, said: "This is the plate that the defendant attached to the back of the Chrysler down in Oklahoma. There is no testimony that he didn't attach it."; and "Now, on element No. 1, the act of transporting the car between states, we have shown that the defendant got into the Chrysler in Oklahoma and then drove it to Kansas City, Missouri. Glenn Manis followed the defendant in his car. This evidence has not been disputed." The references to the failure of defendant to testify were veiled, but it is obvious that, as to each portion of the evidence referred to, the only person who was in a position to contradict it by direct evidence was Tanner. The challenged statements were improper. Barnes v. United States, 8 F.2d 832 (8 Cir. 1925).

However, factually, the facts before us are much more similar to those in Holden v. United States, 388 F.2d 240 (1 Cir. 1968), than to those in *Desmond*. *Holden* is a later case than *Desmond*, is by the same court, was carefully distinguished from *Desmond*, and a different conclusion was reached. We also believe the facts herein are clearly distinguishable from those in *Barnes*, supra. In the instant case no objection was made by defense counsel, and no request was made to the court for a curative instruction. There was no colloquy between counsel and the court which might have emphasized the language, and the inferential application of the language, to Tanner. The defendant was not named, and the language used

was not extreme or pointed. In view of the failure of trial counsel to object or take other action to preserve an appeal thereon in conformity with Rule 51 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., it may be that he was of the opinion that the possible inference to his client went unnoticed, and that any objection by him or curative instruction by the Court would only tend to emphasize Tanner's failure to testify. In any event we are satisfied that, considering the language used, the context in which the statements were made, and the state of the record with reference thereto, such challenged remarks were not prejudicial and clearly not ground for reversal as being "plain error" within the meaning of Rule 52(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., Birnbaum v. United States, 356 F.2d 856, 866 (8 Cir. 1966), and Dichner v. United States, 348 F.2d 167 (1 Cir. 1965).

Finally, Tanner vigorously protests the alleged exclusion of certain "impeachment testimony" of defense witness Betty Kinder. His attack is two-pronged, directed at both defense counsel and the trial court. In his pro se brief appellant asserts:

"This appellant had three (3) reputable witnesses of unimpeachable character present at trial and prepared to testify to the following as to each witness related to the appointed counsel * * *: To wit:."

followed by the names of William A. Tanner, Betty Kinder and John Tanner, and the statements the appellant contends that each of such persons related to defense counsel as having been made by Manis to such person, which statements were allegedly inconsistent with or contrary to portions of his testimony as a witness for the Government. John Tanner was not called to testify; William A. Tanner and Betty Kinder did testify as defense witnesses. Appellant concedes that the prescribed evidentiary procedure was not followed by his counsel, in that he failed to "lay a foundation" in accord with the well-established rule. In Robinson v. United States, 144 F.2d 392,

at page 405 (6 Cir. 1944), aff'd. 324 U.S. 282, 65 S.Ct. 311, 89 L.Ed. 629, the court stated:

"* * * to contradict the witness by evidence of what she had said out of court to other persons on the same subject contradictory to what she afterwards testified in court, it is essential that she should first be asked whether she made such statements at a fixed time and place, to certain persons, and that the words used or their substance be stated to her to * * * reply intelligently."

Also see: Thomas v. United States, 363 F.2d 159 (9 Cir. 1966); United States v. Bowe, 360 F.2d 1, 15 (2 Cir. 1966), cert. den. 385 U.S. 961, 87 S.Ct. 401, 17 L.Ed. 2d 306; 58 Am.Jur., Witnesses, § 779, p. 427; and McCormick on Evidence, § 37, p. 67. Tanner also concedes that his trial counsel did not, at the time he examined Betty Kinder and after the court had ruled on certain objections, make an offer of proof, request permission to recall Manis for the purpose of laying a foundation, or take any other appropriate action to inform the court concerning the substance of the proffered testimony. Hence, Tanner argues, his counsel either was not knowledgeable of the procedural requirements or failed to utilize such knowledge if he was. He concludes, therefore, that his representation was inadequate and ineffective.

The obvious and fatal defect in this contention, and an apparent fact appellant fails to recognize, is that it is premised entirely upon the proposition that the allegations set forth in his brief are true and that counsel was apprised of the prior inconsistent statements allegedly made by Manis to the prospective witnesses, as therein set forth. However, we find no reference to any such alleged facts in the record, and beyond that record this court cannot concern itself. There is absolutely no indication in the record that defense counsel had any knowledge of the alleged inconsistent statements made by Manis. Accordingly, this argument fails. Jackson v. United States, supra.

Appellant challenges the propriety of the court's ruling in sustaining the Government's objections " * * * to defense evidence relating to prior inconsistent statements and admissions against interest made by the government's material witness, Glenn F. Manis," which statements were, allegedly, "directly relative to matters which Manis had previously testified to * * * " He asserts that the proffered testimony concerning inconsistent statements made by Manis was not inadmissible under the hearsay rule, since it was not offered as substantive evidence of the facts stated but only for the purpose of proving the fact that the statements were made. Wigmore on Evidence, Vol. VI, p. 178; and United States v. Anost, 356 F.2d 413, 417 (7 Cir. 1966). Appellant argues that notwithstanding the fact that counsel had not laid the required foundation, had not apprised the court of the limited purpose for which the testimony was proffered, and had made no offer of proof, the impeaching character of the testimony was obvious and apparent, and the court should have permitted the impeachment without foundation, or at least permitted the recall of Manis for denial or explanation. McCormick on Evidence, Sec. 37, p. 70, and The Model Code of Evidence, Rule 106(2).

 We have carefully examined the pertinent portions. of the record. Betty Kinder, on direct examination by defense counsel did testify that Manis had made certain statements to her that were inconsistent with his trial testimony. During cross-examination of Manis the following question was asked and answer given (Tr. 51):

"Q. Now, let me ask you this finally. Have you ever claimed ownership yourself of this car, not saying it was your sister's car, but have you ever said, 'It is my car, I am buying it from my sister,' or words to that effect?

A. No."

Betty Kinder, on direct examination testified as follows (Tr. 78–79):

"Q. What did you know about the car?

A. What did I know? I just know the car belonged between the two boys, I don't know whose it was.

Q. Did you ever make any inquiry as to—

A. No, I didn't ask any questions. He did tell me that the car belonged to him.

Q. Who?

A. Glenn (Manis) * * * "

No objections were made to the foregoing questions, nor was there a motion to strike the answers. Mrs. Kinder further testified on direct examination as follows (Tr. 83):

"Q. Mrs. Kinder, whenever you heard anything about the Chrysler, who was it that told you about it?

A. Glenn did.

Q. Did he tell you that—

A. He asked me how did I like his new car."

To the foregoing questions and answers the Government counsel objected on the ground of hearsay and the trial court stated: "Yes; she can't repeat any conversation she had with somebody else other than the defendant." However, we note that the answers were not stricken. Part of Mrs. Kinder's testimony on direct examination concerning a trip she took to Oklahoma with her husband and Manis, after the latter's release from jail, for the purpose of obtaining bond for Tanner, is as follows (Tr. 82):

"Q. Where did you take him in Oklahoma?

A. Well, I don't know the first place where we went to, but it was on a country road way back in the woods, to my notion, and as we turned off the road there was—I don't know how far we drove on this gravel road, but there was a big farm house and a barn there and he told me that is where he kept that car for two days."

Government counsel again objected on the ground of hearsay, and the court stated: "Don't repeat the conversation,

what he told you. Just tell where you went." Again, there was no motion to strike the answer and the testimony was not stricken. The alleged statement by Manis—that he had "kept that car for two days" at the place described—is, of course, inconsistent with the clear import of his testimony that he had had nothing to do with the possession or keeping the car at that time and place. The only question asked of Mrs. Kinder which was objected to and left unanswered concerned conversations "or anything of that nature * * * that would indicate to you that the car hadn't been stolen by Mr. Tanner?" An objection to that question was sustained on the ground that it was leading. This question clearly did not purport to impeach Manis, for he had not testified that Tanner had stolen the car. In fact, his testimony was, inferentially, to the contrary. The record is clear, therefore, that none of the testimony of Betty Kinder, which was inconsistent with or had the effect of impeaching the testimony of Manis was excluded or stricken. All remained before the jury for their consideration.

 It may be that the admonitions of the court that Mrs. Kinder refrain from repeating conversations had with persons other than the appellant resulted in defense counsel not asking specific impeachment questions. However, in the absence of any questions, the response to which would reasonably be anticipated to be inconsistent with the previous testimony of Manis, and thus support an attack on his credibility, and in the absence of an offer of proof which would inform the court of the nature of the proffered testimony, there was nothing before the court which would justify the exercise of its discretion as suggested by the appellant. We find nothing in the record to support appellant's claim of "clear error" on the part of the trial court in this regard.

In United States v. Peckham, 105 F. Supp. 775, at page 777 (D.C., D.C.1952), rev'd. on other grounds, 93 U.S.App.D.C. 136, 210 F.2d 693 (D.C.Cir. 1953), the court said:

"In the first place it must be observed that, while the Federal Rules of Civil Procedure, rule 43(c), 28 U.S.C.A., contain a provision for offers of proof when testimony is excluded, there is no corresponding provision in the Federal Rules of Criminal Procedure, 18 U.S.C.A. But, be that as it may, a proffer of proof is proper and appropriate in order to make a record as to what examining counsel expects to elicit from the witness, if the witness were permitted to answer the question. Examining counsel can do so, however, only in connection with the direct examination of his own witnesses."

Also see: Frisone v. United States, 270 F.2d 401 (9 Cir. 1959).

With regard to the testimony of William A. Tanner, the father of appellant, the record reveals that all questions asked of him on direct and redirect examination were answered without objection. In fact, on redirect examination, he was permitted to answer the following question (Tr. 76–77):

"Q. What did Mr. Manis say to you apart from saying the car had been stolen, that they changed the plates? Did he say anything else to the best of your recollection?"

No objection to the question or motion to strike the answer was made by Government counsel.

Numerous additional "points of error" not specifically commented upon or herein discussed are set forth and argued in appellant's pro se brief. We have carefully considered each of them and find them to be without merit.

We are convinced that the record in this case fails to support either of appellant's contentions that the quality and character of representation he received from court-appointed counsel violated the required standard, or provides a basis for invoking the "plain error" rule. Rule 52(b), Federal Rules of Criminal Procedure, 18 U.S.C.A.

The judgment appealed from is

Affirmed.